# FILED

**UNITED STATES DISTRICT COURT**

APR 2 1 2025

**FOR THE WESTERN DISTRICT OF TEXAS**   CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| **DAWN C. CHUMAK** (*Pro Se*) <br> 809 Telluride Drive <br> Waco, TX 76712 <br> (254) 744-8434 <br> **Plaintiff,** <br><br> v. <br><br> **UNITED STATES OF AMERICA** <br> c/o **U.S. ATTORNEY** <br> 800 Franklin Avenue, STE 280 <br> Waco, TX 76701 <br><br> **SPECIAL AGENT RAY RIVERA**, of the <br> Bureau of Alcohol, Tobacco, Firearms <br> and Explosives (**BATF**). <br> (*individual capacity*); <br><br> **MR. CHRISTOPHER SHAEFER**, <br> Assist. Dir. Public and Gov. Affairs <br> (**BATF**)(*individual capacity*); <br><br> **JOHN DOE, AGENTS/OFFICERS** 1-6 <br> of the **BATF** (*individual capacities*): <br> and, <br><br> **THREE REGISTERED CLASS III NFA** <br> **FIREARMS** (SNs: C138997; 7085; <br> and 2178A)(*in rem*) <br> **Defendants.** | Case No. 625 CV 155 <br><br> **Jury Trial Demanded** |

## I.   COMPLAINT FOR DAMAGES

(UNREASONABLE SEARCH AND SEIZURE; DUE PROCESS VIOLATION;
DESTRUCTION OF PROPERTY; LACK OF SPECIFICITY)

**INTRODUCTION**

1.    This is a civil rights action raising constitutional claims under the Fourth Amendment, and

the Due Process Clause of the Fifth Amendment, against federal officials of the Bureau of

Alcohol, Tobacco and Firearms (BATF) pursuant to Bivens v. Six Unknown Named Agents of

the Federal *Bureau of Narcotics*, 403 U.S. 388 (1971), and against the United States pursuant to

the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-80 when, on **July 21, 2008,**

Special Agent Raymond Rivera of the BATF seized **Sixty Two** registered Class III NFA weapons

from their lawful owner, Dawn C. Chumak (a fully licensed Class III  Special Occupation

Taxpayer (SOT)) during a scheduled NFA compliance inspection. This seizure of the weapons

was performed by SA Rivera for the purposes of forfeiture, but without following any of the

procedural mandates set out in the "Civil Asset Forfeiture Reform Act of 2000" ( 18 U.S.C. §

983), such as, inter alia, establishing probable cause for a criminal offense,  filing of a complaint

in federal court, sending the Plaintiff notice of a civil forfeiture action against her affecting her

right of ownership of the weapons, or otherwise allow her a proceeding by which to contest the

BATF's taking of the weapons and present her defenses to any alleged charges against her. At no

point, either before or after SA Rivera's taking of the weapons, did the Plaintiff knowingly,

intelligently and voluntarily waive her right of title and ownership of those weapons.

    After the taking of the weapons on July 21, 2008, the Plaintiff engaged in  a very long &

drawn out legal battle (through counsel) for the return of the weapons and this ultimately led the

BATF to proffer the return the majority of the weapons to the Plaintiff, but the Agency insisted

on being allowed to retain possession of **Eleven** of the most valuable firearms in the collection

(those items alone estimated to be worth approximately $350,000.00)  The  Agency provided no

grounds for the retention of those eleven items and the Plaintiff refused to accept such an

arbitrary & capricious "partial" return of her property. The Plaintiff then submitted numerous

requests, through the Freedom of Information Act (FOIA), for information as to the location and

registration status of her Class III inventory in order to seek an injunction from the court for their

return. Those FOIA requests were largely ignored by the agency but then, on **November 3,**

**2022** , the Plaintiff receive notice from the the BATF that the weapons had been destroyed in

2016. The Plaintiff then filed an administrative FTCA claim with the Agency for compensation

for the destruction of her Class III inventory. The BATF denied that claim on **October 21, 2024.**

 Subsequent FOIA requests revealed that **Three** of the most valuable items in her inventory

had not been destroyed by the BATF but, rather, had been retained by the  Firearms and

Ammunition Technology Division (FATD)  in Austin, Texas.

 The Plaintiff is filing this civil action in order to seek compensation  for the BATF agents'

destruction of the **Fifty Nine** items from her Class III weapon inventory, and also the return of

the **Three** weapons that were not destroyed by the BATF.

## II.   JURISDICTION AND VENUE

 2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

because Plaintiffs' claims arise under the Fourth and Fifth  Amendments to the United States

Constitution and the Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346 & 2671-80.

The FTCA also confers jurisdiction. 28 U.S.C. § 1346(b)(1).Venue in this Court is proper

pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this claim all transpired in

Waco, Texas, and also pursuant to 28 U.S.C. § 1346(b)(1) because this is a civil action against

the United States for loss of property and personal injury arising out of conduct of a United

States employee.

### III. PARTIES

3. **Special Agent Raymond Rivera**, worked for the Bureau of Alcohol, Tobacco,

Firearms and Explosives (BATF), out if their Waco Field Office, 6801 Sanger Avenue,

Suite 2200 Waco, TX 76710, when he took the Plaintiffs 62 NFA Class III weapons

during a scheduled compliance inspection, and then selected 11of the most valuable of

those items for the retention during the Agency's attempt at a "partial" return of the

weapons to  the plaintiff.


4.   **MR. CHRISTOPHER SHAEFER**,      Deputy Assistant Director of the Office of

Public and Governmental Affairs at BATF Headquarters,  99 New York Avenue, NE

Washington, DC 20226, when he determined that the BATF had "vested title to [the

Plaintiff's] firearms" without the agency following any of the mandates set out false

statements upon congressional inquiry.


5. **JOHN DOE, AGENTS/OFFICERS**  1-6 of the **BATF** (*individual capacities*) The as yet

nòt be identified agent and officers of the BATF who, knowing that there was no lawful

grounds for the initial taking or continued detention of the 62 NFA firearms, destroyed,

or directed  others to destroy, the firearms


4

6. **UNITED STATES OF AMERICA,** c/o **U.S. ATTORNEY,** 800 Franklin Avenue, STE 280, Waco, TX 76701 as counsel for the BATF, and agents/officers thereof.

7. **THREE REGISTERED CLASS III NFA FIREARMS** (SN: **C138997**; SN: **7085**;  and SN: **2178A**)(*in rem*) are the three firearms that were *not* destroyed by the NFAD branch of the BATF and are registered and titled to the plaintiff, and being held in the BATF Austin Field Office in the "Prop Gun" Inventory.

## IV.   FACTS - HISTORY OF THE CASE

8. **June - July 1983**  Bo Chumak becomes an FFL dealer after purchasing a converted Colt AR-15 from a Class 3 dealer in San Antonio. He then obtains an EIN and becomes a Class 3 Special Operations Taxpayer (SOT). Bo starts part-time firearms business while in medical residency training and service with US Army Reserve.

9. **June 1985** Bo Chumak finishes residency training and moves to Virginia. His FFL, Class 3 registration, and firearms inventory are transferred to the new Virginia location.
10. **May 1986**  Bo Chumak moves back to Texas to start new position in Temple. His FFL, Class 3 registration, and firearms inventory are transferred back to new Texas location.

11. **July 1987**  Bo Chumak and Dawn Shaw are married and residence in Hewitt. Bo Chumak's FFL, Class 3, and firearms inventory are transferred to the new location in Hewitt.

12. **1987 and 1991** The ATF conducts two routine Compliance Inspections -both are passed without problem or discrepancies.

13. **September 1990** Bo Chumak is called to active duty in Support of Operation Desert Shield and is deployed to the Persian Gulf.

14. **June 1991** Bo Chumak returns to the US and is released from active duty. Returns to Texas to resume medical practice and part-time firearms business.

15. **September 1991** ATF office in Denver investigates Bo Chumak regarding three semi-automatic rifles brought back into the U.S. by his former combat unit as "Trophies of War". The matter is totally unrelated to his activities as an FFL or Class 3 dealer.

16. **January 1992** Bo Chumak is indicted in the US District Court in Colorado. Facing possible loss of the firearms inventory, a substantial financial investment, and now marital assets - Dawn Chumak applies for, and his granted, an FFL and Class 3 (SOT) license by the ATF in February 1992.

17. **January 1993** Bo Chumak pleads guilty to *Aiding and Abetting the Use of a False Document* ( a Class E Felony). While awaiting sentencing Bo Chumak receives approval from the US District Court in Colorado and NFA Branch of the ATF to transfer ownership and possession of Bo Chumak's entire firearms inventory to Dawn Chumak. This is completed in early May 1993 and a week later Bo Chumak is sentenced to two

years probation. Dawn Chumak immediately starts the process of transferring her entire inventory to other Class 3 dealers (mostly to a dealer in Maine and another in Texas) for sale or brokerage. For the next 2 years (1993-1995) Dawn Chumak retains no physical firearms inventory and conducts no firearms business.

18. **February 1995**  The US District Court for the District of Colorado grants Early Termination of Probation to Bo Chumak. The dealer in Maine had taken financial advantage when selling several of the brokeraged machine guns. Dawn Chumak makes application to the NFA Branch of the ATF to transfer back the remaining firearms inventory - approval is granted in May 1995.

19. **May 1995** By late May the remaining firearms inventory is back in the procession of Dawn Chumak at her licensed location in Hewitt. Dawn Chumak is afraid to conduct much business activity. The firearms are even moved to another location - a climate controlled and locked storage site ( Paper Safe ) in Waco - where they remain until Paper Safe is "bought-out" by Central Freight and the firearms are moved to their new facility on Highway 6. Bo Chumak was never allowed or authorized access to the firearms at either location.

20. **August 1995.** The ATF office in Waco contacts Dawn Chumak and requests her assistance in disposing of several machine guns, suppressors, and other firearms from the Cox Estate after they had been stolen from Mrs. Cox's home - then recovered by the ATF and Waco Police Department. The law firm of Sheehy, Lovelance, and

Mayfiled was handling the estate matter and sale of the firearms. Both check with

The Austin ATF office and Bo Chumak even speaks with ATF Senior Agent Dale

Littleton - who is very familiar with Bo's case, as well as another agent in the San

Antonio office, and are told that this is allowed as long as Dawn has a valid, and

current, FFL license and has paid her annual SOT fees. They also advise that an

FFL licensee must be actively engaged in conducting firearms business or risk

being suspected of having a license for the sole intent of "enhancing a personal

collection". Bo Chumak asked specifically about being a "felon" and Agent Dale

Littleton advised that since we were married I was an "intimate partner" and it

was reasonable for me to assist, and advise, her in managing Dawn Chumak's

firearms business as it constituted "shared and community assets" - specially

when Dawn had limited knowledge and experience. Littleton also mentioned that

someone does not automatically give up their own personal rights should another

legal member of the same household lose their rights ! So Dawn Chumak went

ahead with the Cox Estate transaction and in October 1995 the entire inventory

transfer was approved by the NFA in Washington, DC.

21. **July 2000** Dawn Chumak purchases another group inventory from Bradley Steiger -
most of these firearms were once sold to him.Twenty-three NFA/Class 3 items and

seven Class 1 firearms are purchased. Transfer taxes were paid on each and

appropriate NFA transfer approval application made.

8

22. **October 2000** Mr. Steiger's NFA approved inventory is delivered by UPS to Dawn

Chumak's licensed location in Hewitt - but six NFA items (a pen gun and five

suppressors) are missing. All apparently were illegally retained by Mr. Steiger's neighbor

and friend (Mr. Robert Dean) in Alabama after Mr. Steiger was arrested on unrelated

charges. The missing firearms are reported to Mr. Steiger, his attorney, Mr. Dean

and the ATF (including the NFA Branch) - multiple times - without resolution.

23. **July 2003** Our family moves to our new home in Eddy. Dawn Chumak again wants

to close her FFL and SOT - terminating her part-time firearms business. However, she is

unable to do so as the matter of the missing and never delivered firearms still

remains unresolved. The NFA and ATF Agent Dixon are again contacted - again

several times. The ATF in Alabama finally visits Mr. Dean and confiscate two of

the missing firearms but by February 2004 there is still no resolution and Dawn is

unable to close her books of business. Dawn Chumak has to continue to renew

her FFL license every three years and pay her annual Class 3 / SOT taxes.

24. **April 9th, 2008** ATF Inspector Curry, from San Antonio, attempted an unannounced

compliance inspection. Her phone message stated that she did not get out of her

vehicle as she was afraid of the two dogs outside our property in Eddy. Dawn Chumak

did call her back on April 10th and an inspection was scheduled for May 19th. Dawn

explained that she wanted to close her books and business. This seemed to

please Inspector Curry as she seemed more interested in having Dawn close her

firearms business than conducting an inspection of her inventory - despite the

fact that Dawn's firearms inventory and books have never been inspected since becoming an FFL licensee more than SIXTEEN YEARS earlier in February '92.

25. **Late April 2008** Firearms moved from Central Freight's secured storage facility to locked safes on licensed premises in Eddy, so that they may be inventoried by Dawn Chumak in preparation for the upcoming May 19th scheduled ATF compliance inspection. Bo Chumak did not have access to safes or the locked room in which the safes were kept.

26. **May 13th, 2008** ATF Agent Taylor contacts Dawn Chumak about a "report" he is investigating on her "ex- husband" Bo Chumak.   She informs him that they were still married and of the scheduled May 19th inspection - Agent Taylor was unaware of both. Agent Taylor cancels the scheduled May 19th compliance inspection and requests to meet with her instead. Dawn again relays her desire to "close" her books and sell as much of the firearms inventory as she can and to resolve some still "open problems". She is again told to "dispose" of as much of her inventory as she can. During that conversation Agent Taylor also informs Dawn Chumak that there had apparently been an anonymous phone-line tip by an individual, who has never been identified, to the Phoenix Field Office of the BATF informing said office of of Dr. Chumak's status as a felon, and Dawn Chumak as a FFL & SOT holder (information already known by the agency) and made a suggestion that an investigation should be performed to see if the Chumaks were involved in any transactions by which firearms were being released into Mexico.    **\*\* Historical Note:**  At that time period, the BATF had been deeply

involved in a "gun-walking" scheme by which agents at the Phoenix Field Office of the BATF were intentionally allowing the sale of firearms to suspected Cartel members, and had, unsuccessfully, tried to electronically track those weapons to the higher echelons of the Cartel.  The BATF operation had not reached the intended targets, not only because of the tracking failures, but also because the firearms were not apparently being passed along to the leaders of the Cartel.  The fact that an **SA Rivera** (the agent who took over the case from Taylor) had come from the Phoenix Field office, and had *immediately* focused on taking possession of several highly valuable machine guns in the Chumak inventory, regardless of the fact that the BATF had already approved the transfer of said firearms to FFL/SOT's in the United States, raises some level of suspicion about SA River's motivation for the taking the NFA weapons from the Chumaks, and if he may have intended to place those weapons into the BATF's "prop gun" inventory for use in their failing undercover operations.  If there had been any real suspicion of illegal activity on the part of the Chumaks, the Agency would have had to take the entire GCA & NFA firearm inventory, not just the most highly prized machine guns. . As the compliance inspection of Mr. Bean on **July 21, 2008**  (See para. 37, infra) had proven that the Chumaks NFA inventory was fully intact, and there had been no unauthorized or improper  transfers of those highly regulated items to any individual not identified and approved by the BATF,  there was simply no lawful grounds upon which to take those firearms from the Plaintiff. **End Note **

27. **May 29th , 2008** Dawn Chumak meets with Agent Taylor and provides him with all her records - as well as detailed information of the previously mentioned firearms

problems. She also informs him that she has buyers for almost all the owned inventory and is waiting receipt of a deposit check from one of the Class 3 dealers to start the NFA transfer process. Agent Taylor tells Dawn to go ahead with the dispositions but not to ship anything out until he has an opportunity to inspect each firearm being transferred. She agrees and allows him to retain, and copy, all her records. He also instructs Dawn to again contact the NFA Branch about the missing items for resolution - and Dawn complies. Dawn picks-up her FFL and NFA records from Agent Taylor on May 30th.

28. **June 3rd , 2008** Agent Raymond Rivera replaces Agent Taylor due to an apparent conflict of interest as both of their children attend the same private school, and are in the same grade, at Live Oak Classical School in Waco. Agent Rivera orders Dawn to now "hold" any firearms transfers, dispositions, or sales - despite already having completed NFA transfer forms on hand as well as a deposit of $ 33,125.00 from one of the buyers.

29. **June 10th , 2008**  Dawn Chumak calls Inspector Curry to ask about some reported inaccuracies and status of her license.

30. **June 13, 2008**  Dawn Chumak receives her 2009 SOT Letter from the NFA Branch of the ATF allowing her to continue Class 3 / SOT transactions through the end of June 2009.

12

31. **June 16, 2008** Mr. Ron Howard at the NFA Branch of ATF verifies that there are no "holds" or "restrictions" on Dawn's FFL or SOT. He also verifies that the previously reported missing NFA items have been noted in the NFA Registry as "missing" since 2004 and that the NFA will contact the involved ATF agents to see about following up.

32. **June 30th, 2008** Agent Rivera demands the immediate surrender of Dawn Chumak's entire NFA inventory and license yet allowing Dawn to "keep" the Class 1 inventory so that she may attempt to sell it. This information is conveyed to Bo Chumak on July 1st and an appointment is made to meet with Attorney Bill Johnston on July 21 at which point Mr. Johnson is retained by Bo Chumak.

33. **July 3rd , 2008** Attorney Johnston contacts US Attorney Mark Frazier and ATF Agent Ray Rivera in an attempt to address the problem.

34. **July 15th, 2008** Agent Rivera continues to coerce  Dawn Chumak to surrender and forfeit her entire NFA inventory under a threat of criminal prosecution as a "straw purchaser" and "improperly obtaining an FFL"  so that she and her husband could sell their rather sizable  GCA Class I and NFA Class III firearm inventory.  Agent Rivera wanted this surrender of the Class III inventory done by the 16th but then offers the 18th or 21st as the only two other alternatives dates to comply with his demands.

13

35. **July 17, 2008**  Attorney Johnston attempts to work with Agent Rivera to allow for more time in resolving the matter. Rivera remains firm and threatening - a resolution is then sought by Attorney Johnson directly through the US Attorney - Mark Frazier.

36. **July 18th, 2008**  Agent Rivera's final ultimatum to Dawn Chumak is to "voluntarily surrender" her inventory of 39 NFA firearms - even though she has 63 items in her inventory and possession. Unable to successfully communicate with Agent Rivera, Attorney Johnston, has to again work directly with the US Attorney's Office in Waco and US Attorney Frazier is also unable to get Agent Rivera to comply with requests or guidance from his office. Eventually an agreement is reached between Mr. Frazier and Mr. Johnson that any, and all, firearms that Agent Rivera will demand on July 21st will be given to him for possession - but that they will not be surrendered or forfeited by Dawn Chumak while everyone has an opportunity to resolve the matter administratively. US Attorney Frazier assures Attorney Johnston that only administrative procedures will be followed and that his office will decline any criminal requests made by Agent Rivera. Agent Rivera is instructed by his ATF superiors to hold the weapons in Waco until the matter may be fully resolved.

37. **July 21st , 2008**  ATF Agent Ray Rivera and ATF Compliance Inspector Bean meet at 9AM with Dawn Chumak at her licensed premises for the 9AM appointment. Over the next six hours Inspector Bean conducts a close inspection of Dawn entire NFA and Class I inventories and find everything in order. Agent Rivera takes possession

14

of the entire NFA inventory - consisting of 26 machine guns; 24 suppressors and suppressed weapons; 9 short barreled & AOW weapons; and 3 pen guns - all 62 NFA items. The Class 1 weapon inventory is only inspected - but allowed to remain in the secured possession of Dawn at her licensed location. The only actual document produced at the time of Agent Rivera's 'taking' of the 62 NFA items from the Plaintiff was his annotations on an inventory sheet, titled "N.F.A / Class III Inventory." (See **Exhibit [A]** ) This inventory sheet had been provided by the Plaintiff and Agent Rivera personally annotated in writing on that sheet that he had "[R][eceived possession of the listed marked property items pages 1 through 5" while placed a 'check' next to each listed item of the inventory, and signing each page with his name & badge number. Agent Rivera gave no indication on this "N.F.A / Class III Inventory" sheet that's the items there listed had been "abandoned " by the plaintiff on the day he took said items into his possession. There is nothing on that inventory sheet indicating that the listed property items were voluntarily surrendered or forfeited by the Plaintiff, or "seized" by SA Rivera as evidence of a crime, or anything other than those verbally demanded items being given to and "received [for] possession" by SA Rivera for while administrative procedures & remedies were to be pursued, as was agreed by the parties, and counsel, on July 18, 2008. (See para 36, supra)

Furthermore, neither at the time of the taking of the firearms by SA Rivera, or at any time thereafter, did the Plaintiff sign any documents or make any written or verbal statements indicating that she had voluntarily, knowingly, or intelligently waive, surrender, or relinquished her rights of ownership, title, interest in, or all claims to the 62 NFA items taken by SA Rivera; nor did the Plaintiff expressly consent to the forfeiture of

15

said items, or knowingly or intelligently waive her rights to receive notice of any non-judicial civil forfeiture proceedings against her, or her right to challenge any forfeiture, or her rights to request remission or mitigation in any non-judicial forfeiture proceeding filed against her,  or her right to otherwise seek the return of the taken property, or her right to receive notice of any intention of the BATF to destroy the 62 NFA firearms —all registered and titled to her — as abandoned property.

38. **July 30, 2008**  Attorney Johnson submitted a letter to US Attorney Frazier which summarized that "Special Agent took possession of certain firearms"  and reiterated that, in their meetings and discussions, it was Attorney Johnson's understanding that "based upon the facts at hand, [the US Attorney] intend[ed] to decline the Chumak matter" and, by necessary implication, said matter was going to be pursued in an administrative (not criminal) manner.  See **Exhibit [B]**

39. **December 12, 2008**  Approximately 5 months (**145 days**) after SA Rivera's taking of the 62 NFA firearms from the Plantiff, Dawn C. Chumak, the BATF provided a "Notice of Forfeiture proceedings" ( See **Exhibit [C]** )  to Dr. Bogdan Chumak (her husband) despite the fact that he had *not* been the registered owner of those firearms for over 15 years, and the Plaintiff was the only duly licensed FFL and Class 3 (SOT) holder with the legal authority to possess those firearms, and from whom those firearms were taken by SA Rivera on July 21, 2008. In fact, Dr. Bogdan Chumak was not present at the time of the  taking of the 62 NFA firearms from the Plaintiff, and had no standing as the current owner of the 62 NFA firearms taken  by SA Rivera from the Plaintiff, who was

16

the actual owner of record for that property. The BATF knew full well that the Plaintiff

was the *only* lawful owner of the 62 NFA firearms, as all of the **ATF Form 3**'s (indicating

"business" inventory) and the **ATF Form 4**'s (indicating "personal use" inventory) all list

"Dawn Cherie Chumak" as the sole "Transferee" of the NFA items taken on July 21 by

SA Rivera. See **Exhibit [D]** Dr. Bogdan Chumak's name does not appear on any of

the relevant BATF Forms 3 & 4, or appear in any documents or filings in any legal

proceedings related to the 62 NFA firearms, which would confer any possessory

ownership interest, prior to the BATF improperly identifying him as the "owner" of the

taken property by the Agency's sending of the "Notice of Forfeiture proceedings" to him

and stating that "You may contest the seizure and forfeiture of the property in the United

States District Court by filing a Claim, or consent to the forfeiture of the property through

the administrative process and seek equitable relief from the forfeiture by filing a

Petition for Remission or Mitigation of Forfeiture." (See **Exhibit [C]** at lines 21-23).

The statutory requirements are clear where Title 18 U.S.C. § 983(a)(A)(i) sets out that

"in any nonjudicial civil forfeiture proceeding, with respect to which *the Government is*

*required to send written notice to interested parties, such notice shall be sent in a*

*manner to achieve proper notice as soon as is practicable, and in no case more than 60*

*days after the date of the seizure*" (emphasis added). Aside from failing to meet the 60

day provision of notice mandate set out in the statute, Dr. Bogdan Chumak was *not* the

"interested party" with possessory ownership rights to the 62 NFA firearms, or to whom

the statute required notice, as he had no legal standing to assert any posessory

interest in any firearms, in a forfeiture proceeding or otherwise, since his possessory

interest in firearms ended in 1993 with his plea of guilty to a Class E felony. His was

17

also divested of his posessory interest in those specific firearms when said firearms were, subsequently, lawfully transferred to the Plaintiff after she was approved for licensure in as a FFL,Class 3 SOT by the BATF in 1992 and could lawfully own, poses, and sell Class I and III firearms. The only interest that was retained by Dr. Chumak, was not a posessory one but, rather, an interest in those items a substantial joint marital investment that was solely in the possession of the Plaintiff. The BATF's late notification of a civil forfeiture action against Dr. Chumak, who was not the party from whom the weapons were taken, and the Agency's denial of a timely notice to the Plaintiff, who was the owner from whom the firearms were physically taken, and the only party *with* a possessory interest in those firearms, did nothing to alert the Plaintiff that the nonjudicial forfeiture proceedings directed against Dr. Chumak was being directed against her, or that said notice to Dr. Chumak was intended to alert her to any claim being levied by the BATF against her property ownership rights, or that the notification to Dr. Chumak constituted notification that her possessory interests were at stake, or that she was required to assert her rights within the time frame set out in that notice for Dr. Chumak, or that she was given an opportunity to to access the administrative process, procedures, and forum required by law by which she could contest the governments attempt to divest her from her property, meets the definition of a "sham litigation" initiated by the BATF. California Motor Transport. Co v. trucking Unlimited, 404 U.S. 512 (1972)(Defining as a "sham" any conspiracy where "the power, strategy, and resources of the [opposing party] were used to harass and deter [party] in their use of administrative and judicial proceedings so as to deny them "free and unlimited access" to those tribunals [] such that the machinery of the agencies and the courts was

18

effectively closed to [the party])(defining "sham" theory as it pertains to the Sherman Act).

In the instant case, where the BATF failed to provide a timely "Notice of Forfeiture proceeding" against the Plaintiff, and thereby starting the procedural clock where, under the  Civil Asset Forfeiture Reform Act of 2000" (CAFRA),  Title 18 U.S.C. § 983, there are statutory obligations required of the Agency, and rights of property ownership are protected from Governmental overreach by the inclusion of the mandate that "If the Government does not send notice of a [nonjudicial civil forfeiture proceeding] to the person from whom the property was seized [] the Government shall return the property to that person[.]" 18 U.S.C. §(a)(1)(F).  The BATF's initiation of a "sham" nonjudicial civil forfeiture proceeding against a party whom they knew had been divested of of his possessory interests in any firearms 15 years earlier, was no mere mistake, clerical error, or inadvertence.  The Agency knew full well that SA Rivera had taken the 62 NFA firearms from the Plaintiff on July 21, 2008, not from Dr. Chumak's, while administrative remedies were to be pursued and that all the titling documents (ie. The ATF Forms 3 & 4) indicated that the Plaintiff was the lawfully registered owner of those firearms. Under these circumstances, the initiation of a "sham" civil forfeiture proceeding against Dr. Chumak (a party with a non-possessory interest in the firearms, ie. an interest in the items solely as having been a joint marital investment) was an attempt by the Agency to deny the Plaintiff an opportunity to assert her rights under  Title 18 U.S.C. § 983(a)(1)(A) and (F) to have her property returned, and to deny a forum under which to assert that right, where she had no notice of any nonjudicial forfeiture proceedings that had been directed against her or that threatened her right of ownership of the property NFA

19

firearms physically taken by SA Rivera for safekeeping while administrative procedures were to be pursued, as agreed to by the parties on **July 18, 2008**. (See para 36, 37, 38, and **Exhibit [B]**)(supra)

40. **January 8, 2009** Despite having been improperly served by the BATF with a "Notice of Forfeiture proceedings" against him (See para. 39, and **Exhibit [C]**, supra), Dr. Chumak, through counsel, made a valiant attempt to defend his right to sell or otherwise dispose of the NFA items as a marital asset by his filing, through Counsel, of a "Petition for Remission or Mitigation of Forfeiture" ( See **Exhibit [G]** ) without any requirement for his taking possession of the NFA items, either before, during, or after the sales transaction of said items. The sale of the NFA items had already been approved by the BATF, and effectuated by the Plaintiff, without Dr. Chumak taking any actual or constructive possession of any firearms. That approved sale was ordered by SA Rivera to be cancelled when he decided, without just, or probable cause for doing so, to take possession of the Plaintiff's entire NFA inventory.

Where Attorney Johnson has set out both factual and legal grounds for remission or mitigation of the Government's non-judicial forfeiture, the Plaintiff incorporates those factual and legal grounds herein.

41. **March 16, 2009** Approximately 8 months (**239 days**) *after* the taking of the 62 NFA firearms from the Plaintiff by Special Agent Rivera on **July 21, 2008**, SA Rivera produced a "Receipt for Property and Other Items" ( See **Exhibit [E]** )in which he listed the 62 items he seized from the Plaintiff and, despite SA Rivera's insistence that the

Plaintiff 'back-date' the Receipt to the date of the original seizure *—as he had done on his signature block—* the Plaintiff refused to back-date her execution of the document and properly dated her signature as being applied on "**3/16/09**" as the date she actually signed the document presented by SA Rivera,  and properly annotated that's the listed items were "**Taken 7/21/08**" in the space for her signature block.

On that same form, SA Rivera annotated (in small print) that the "Basis for Transfer or Seizure of Items" was purportedly the "*Abandonment of sixty two NFA firearms.*"  See **Exhibit [E]** (at block 8)   This annotation of "*Abandonment*" by SA Rivera is in direct conflict with the agreement made by  US Attorney  Frazier and Attorney Johnson on **July 18, 2008** (See para 36, 38, and **Exhibit [B]**, supra) that, although the firearms demanded by SA Rivera will be "given to him for possession" they would not be "surrendered or forfeited" by the Plaintiff, that there would be an "opportunity to resolve the matter administratively" along with US Attorney Fraizer's assurance that "only administrative procedures will be followed." This annotation of "Abandonment" is also in direct conflict with the fact that SA Rivera clearly  indicated on the "N.F.A. / Class III Inventory Inventory Sheet" — which he signed on the actual date of the transfer — only that he "received possession of the listed marked property items" and gave no indication that the items had been voluntarily surrendered, abandoned, or that any other property rights were considered to have been relinquished or ceded by the Plaintiff other than that of physical possession.

When determining whether the 'backdating' of a document is legal or illegal, it ultimately depends on the intent of the person who is asserting that such a dating is

required and, if it is being done to evade regulations, or to conceal the agency's failure to perform a legal mandate, the act of backdating  becomes illegal.

The "Civil Asset Forfeiture Reform Act of 2000" (CAFRA),  Title 18 U.S.C. § 983(a)(1)(A)(i), sets out  that "in any nonjudicial civil forfeiture proceeding, with respect to which the Government is required to send written notice to interested parties, such notice *shall* be sent in a manner to achieve proper notice as soon as is practicable, *and in no case more than 60 days after the date of the seizure*." (emphasis added)  As there had been no notice of forfeiture sent to the Plaintiff within the CAFRA mandated of 60 days — or within the 120 days mandated by the GCA  at 18 U.S.C. §924(d)((1) where "Any action for the forfeiture of firearms [] *shall be commenced within on hundred and twenty days of such seizure*." — from the date SA Rivera had seized/taken the 62 NFA firearms from the Plaintiff, and none of the relevant exception clauses for the notice deadline(s) had been satisfied (ie. the filing of a civil judgment forfeiture action, or the obtaining of a criminal indictment containing an allegation that the property is subject to forfeiture) where such exceptions had been precluded by: (i) US Attorney Fraizer's determination that there were no grounds for a criminal indictment (See para. 36, 38, and **Exhibit [B]**, supra); and (i) SA Rivera's failure to seek a civil judicial forfeiture with the Court;  the only way for SA Rivera to avoid the mandate set out in § 983(a)(1(F)  — which provides that "if the Government does not send notice of a seizure of property [for civil forfeiture] to the person from whom the property was seized [] the Government *shall return the property to that person* without prejudice to the right of the Government to commence a forfeiture proceeding at a later time" (emphasis added) — was to create the facade of an "abandonment" of the property by the Plaintiff on the day he took the

62 NFA firearms, by inserting the "Abandonment of sixty two NFA firearms" as the basis for the transfer or seizure of firearms, and trying to have the Plaintiff backdate that document to bolster his creation of a condition that did not exist at the time of the seizure. The condition of abandonment, whereby the Plaintiff relinquished all rights of ownership, as opposed to that of mere physical possession, had been specifically precluded by counsel for both the Government and the Plaintiff on **July 18th, 2008**. (See para 36, 38, and **Exhibit [B]**, supra). And where the BATF would like to claim that the CAFRA deadlines are inapplicable due to the "customs carve-out" exception at 18 U.S.C § 983(i), such a claim is unavailing as the Agency has failed to charge any specified crimes, or violations, under the carve out statutes that incurred, or were alleged to have been incurred so as to warrant any seizure or forfeiture of the Plaintiff's firearms. Even the GCA sets out at 18 U.S.C. §924(d)((1) that "Any action for the forfeiture of firearms [] *shall be commenced within on hundred and twenty days of such seizure*." (emphasis added) Given that the BATF never gave notice to the Plaintiff, or initiated a civil forfeiture action against her, the "return [of] property" provisions of 18 U.S.C. § 983(a)(1(F) would apply.

Simply put, the Plaintiffs mere ceding of her possessory interest in the 62 NFA firearms to SA Rivera, when he demanded taking physical possession of those items was not, without more, a cessation of the Plaintiff's right of ownership of those firearms. SA Rivera's deceptive attempt to insert the condition of "abandonment" on the late Receipt, and to have the late Receipt back-dated to imply that the condition of abandonment existed on **July 21, 2008**, when it had been specifically excluded by counsel for both sides prior to the taking by SA Rivera, was an act of fraud on the part of

SA Rivera and nullifies any attempt by the Government to claim that such a condition existed, or to then take action based upon any claim that the 62 NFA firearms had been "abandoned' and the Plaintiff's right of ownership had ended by the mere transfer of physical possession of the 62 NFA firearms to SA Rivera.

42. **March 16, 2009**   During the signing of the "Receipt for Property and Other Items" See **Exhibit [E]** (para. 40, supra) Attorney Thomas  West was present  and witnessed the Plaintiff's signature upon the Reciept as being performed on "**3-16-09**" and, like the Plaintiff, refused to back-date that document as had been requested by SA Rivera. Attorney West also annotated that the listed property had been **"taken"** on "**7-21-08**"and gave no indication, thereby, that the property had been "voluntarily surrendered" or "abandoned" by the Plaintiff.

43. **May 25, 2010**  Ms. Wanda L. Boss, of the Asset Forfeiture and Seized Property Department of the BATF, despite her department having submitting a" Notice of Forfeiture proceeding" against him on **December 12, 2008** (See para. 39, 40, and **Exhibits [C] & [F]**, Supra), denied Dr. Chumak's petition for remission or mitigation. In the denial letter, Ms. Wanda L. Boss stated, inter alia, that:

   (a). "The petition has been reviewed by division Counsel in the Houston Field Office. After reviewing the Petition, Division Counsel has concluded *the evidence established that the firearms have been involved in a violation of the NFA*" (See **Exhibit [G]**, lines 17-19)(emphasis added)

   — The record of the case, however, is completely devoid of any evidence
   that there have been unlawful activity on the part of the the Plaintiff, or Dr.
   Chumak, as no witnesses have come forward and made any statements

supporting any alleged illegal activity, no documents have ever been produces showing any improper transactions regarding any firearms (NFA or otherwise), and all FFL and SOT licensing of the Plaintiff, as well as the registration & transfers of all firearms by the Plaintiff, have been thoroughly reviewed by the BATF agents at all levels *and approved* on multiple occasions, without the finding of any improper application for licensing, or improper transfers of firearms having been made by the Plaintiff, or Dr. Chumak. Furthermore, Dr. Chumak's status as a felon has been well known by the BATF since 1993, and all licensing of the Plaintiff, and transfers of firearms to her, were fully authorized by the appropriate officials and departments of the BATF.  (See **Exhibit [D]**)


—The record of the case is also devoid of any notification of the "violation of the NFA" which has occurred, or the elements of the purported violation, that would warrant the charging the Plaitiff, or Dr. Chumak's of any crime, or dispossessing them of their property. Attorney Johnson had repeatedly requested that clarification by the agency so he could properly defend his clients, yet the BATF and their Counsel have consistently refuse to provide the required constitutional specificity for any alleged violation of the NFA. They claim has been committed by the the Plaintiff, or Dr. Chumak, by failing to provide notice of any specific crime.

> "The specificity requirement serves to insure that a defendant only has to answer to charges actually brought by the [charging body] and not a prosecutor's interpretation of the charges, that the defendant is apprised of the charges against him in order to permit preparation of his defense, and that the defendant is protected against double jeopardy. *See United States v. Haas*, 583 F.2d 216 (5th Cir.), *reh'g denied*, 588 F.2d 829, *cert. denied*,

440 U.S. 981 (1978).   DOJ: Criminal Resource Manual 1-499 §223.
Requirement of Specificity

(b). "Division Counsel has thoroughly reviewed you clients petition and has
determined that he does not meet the definition of a petitioner under the applicable
regulations." (See **Exhibit [G]**, lines 20-21)

— Such a determination by the Division Counsel, where counsel had

already reviewed the Chumak case and determined that the regulations

already allowed Dr. Chumak to be an interested party to the case —

sufficient for the BATF to sent him a "Notice of Forfeiture proceeding"

lodged against him by the Agency on December 12, 2008 (See **Exhibit

[C]**) —yet when he followed the instructions within that Notice, specifically,

that he "may submit to the ATF a Petition for Remission or Mitigation of

Forfeiture" to the ATF and, thereby, become a petitioner, it becomes a

clearly arbitrary and capricious determination on the part of Division

Counsel for that Agency to then determine he did not meet the definition of

a petitioner or interested party.

Government agencies have a responsibility to: 1. Make decisions

based on a thorough consideration of relevant factors 2. Provide clear

explanations for their actions 3. Act within the scope of their statutory

authority 4. Maintain records that demonstrate the rationale for their

decisions. And The Administrative Procedure Act (APA) instructs courts to

"hold unlawful and set aside agency action, findings, and conclusions

found to be arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law."  See 5 U.S. Code § 706 ( The reviewing court shall

compel agency action unlawfully withheld or unreasonably delayed; and

hold unlawful and set aside agency action, findings, and conclusions

found to be arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law); and Title 50 ECFR §12.3(a) sets out that "If you are

an interested party, you may file a petition for remission of forfeiture with

the Service to return seized property that is subject to administrative

forfeiture."

(c). "Even if your client is considered to. Have an ownership interest in the
assets, the assertions for remission or mitigation would be negated by his ineligibility to
have the assets returned to his possession." (See **Exhibit [G]**, lines 21-23)

— There is nothing in Dr. Chumak's Petition for Remission that asserts that the

assets would be returned to him, or even returned to the Petitioner but, rather,

that the firearms "should be allowed to be sold"  (See **Exhibit [F]**, which, for his

part, would not require Dr.. Chumak to be in actual or constructive possession of

any firearms, as all firearm sales had been made by the Plaintiff — the sole party

with the license to possess and sell the marital assets, and from whom the

assets had been taken.

44. **May 28, 2010**  Attorney Johnson submitted a letter to the Chief of the Asset

Forfeiture and Seized Property division of the BATF, **Ms. Wanda L Bossa**, requesting

that she "safeguard the seized property so that its value and integrity are maintained

pending final determination by a federal court or civil authority" while administrative and

judicial remedies were pursued in the matter. See **Exhibit [H]**

45. **August 13, 2010**  Attorney Johnson submitted a letter to"Request for reconsideration regarding seizure of certain firearms and related property" (See **Exhibit [I]**) which reiterated that  "ownership" and "possession" are two distinct concepts that are independently evaluated when it comes to a felon's disability under 18 U.S.C. §922(g), and sets out in the Request that:

(a). "Dr. Chumak does not ask that firearms be "returned' to his possession as the [Bossa] denial states. They were never in his possession.  The Chumak's seek the return to Ms.Chumak's inventory as a duly licensed FFL. Alternatively, as her affidavit states, Ms. Chumak would likely agree to have the ATF retain possession and facilitate the transfer to an ATF approved buyer with whom Ms. Chumak arranges a sale." (Id. pg.2, lines 13-17).

(b). "The firearms which were seized were the inventory of Dawn Chumak, who was the Federal Firearms Licensee. As her attached affidavit reflects, she did not willingly abandon her inventory. Instead, she was *directed* to "turn over" her inventory to a Special Agent. At no time did Mrs. Chumak receive notice by ATF of her rights to contest the seizure of her inventory. Mrs. Chumak is properly before this agency at this time in seeking reconsideration of the denial of the Petition in Remission. Short of a Section 1983 or Bivens action, this is the only forum available for her to seek redress." (Id. Pg. 2, lines 19-25)(emphasis in original)

(c). Attorney Johnson also set out the BATF's due process violations, where they failed to provide, inter alia: (i) notice of the factual or legal grounds upon which the Agency determined that her property had been taken and her ownership right could be forfeited; (ii) an administrative procedure/forum where she could proffer her defense against any charges being levied by the Government against her property , and her right of ownership of the 62 NFA firearms taken from her — as opposed to any ownership/ property rights of her husband — by stating:

"The taking of Mrs. Chumak's inventory was completely without due process. She was not given notice of the grounds for the seizure, nor her rights to complain about it." (Id. lines 26-27); and,

"Even as of the date of this letter - some two years after the taking - not one fact has been stated by the government as to why the inventory was taken. Not a single affidavit or other verified pleading or statement has been filed to show why the firearms were taken. No magistrate has reviewed any allegation to determine whether the seizure should have ever taken place.

The denial of the Petitioned stated, "...Division Counsel has concluded the evidence established that the firearms have been involved in a violation of the NFA." Neither Dr. nor Mrs.have been provided notice of *what* evidence established *which* violation." (Id pg. 2 lines 35-41, and pg. 3 line 1)(emphasis in original)

46. **November 23, 2010** The Associate Chief Counsel of Field Operations and Information, Mr. Barry S. Orlow,  of the BATF **denied** the Request for Reconsideration (See **Exhibit [J]**).

(a).  In Mr. Orlow's response he acknowledged that the BATF had intentionally sent the Notice of Forfeiture for the 62 NFA firearms to Dr. Chumak on **December 12,**

**2008**, a person whom the Agency *had known full well was convicted of violating 18 U.S.C. § 1001 (aiding and abetting the use of false document)(a Class E felony) since 1993 — when the BATF participated in Dr. Chumak's prosecution*, and then, subsequently, authorized the Plaintiff to obtain her FFL and SOT status so that, with the "approval from the US District Court in Colorado and NFA Branch of the ATF [] ownership and possession of Bo Chumak's entire firearms inventory [was transferred] to Dawn Chumak" (See para. 17, supra).

(b). The BATF chose specifically *not* to send the Notice of Forfeiture to the Plaintiff, the  person whom they had dispossessed of the 62 NFA firearms on **July 21, 2008** — the only 'beneficial owner" with "*actual use of*, as well as an interest in" the firearms that were taken by SA Rivera.

(c). By failing to send a  timely "Notice of Forfeiture" to the "beneficial owner" in accordance with the mandated 60 days (under CAFRA and where the 'customs carve-out' exception is inapplicable due to the lack of any alleged violation of the custom laws) or within the 120 days mandated under the GCA  from the date the firearms  were taken, the Plaintiff was denied her right to due process right to notice and an opportunity to be heard in regards to her right of ownership, and the right to have those firearms returned to her if the Government fails to heed the jurisdictional deadlines.

> See §983 **General rules for civil forfeiture proceedings**:
> "Except as provided in clauses (ii) through (v), in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute with respect to which the government is required to send written notice to interested parties, *such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure*." 18 U.S.C. § 983(a)(1)(A)(i) (emphasis added); and,

> "If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, *the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time.* The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.  18 U.S.C. § 983(a)(1)(F) (emphasis addd)

> "The majority rule is that only the administrative forfeiture must be commenced
> within 120 days (which, of course, is more than the 60 days allowed by CAFRA):
> *United States v. Ninety-Three (93) Firearms*, 330 F.3d 414, 417 (6th Cir. 2003) (requirement in 18 U.S.C. § 924(d)(1) that forfeiture of firearms or ammunition must be commenced within 120 days of seizure is satisfied by commencement of either administrative or judicial forfeiture proceedings within that period); *United States v. Twelve Firearms*, 16 F. Supp. 2d 738, 740-41 (S.D. Tex. 1998) (same); See Overview of Asset Forfeiture, ATF-Office of the General Counsel, New Orleans - April 24, 2018

(d). Mr. Orlow describes how the BATF agents turned a "customary interview" about an administrative petition into a custodial interrogation of Dr. Chumak — about baseless allegations of criminal activity —and called it "Noteworthy" that Dr. Chumak chose to exercise his constitutional rights and protect himself from overreaching by the Agents assigned to the case. It is absurd to insinuate that Dr.n Chumak's  declining of such an interview is indicative of some form of guilt.  What is more noteworthy is that the Agency took the entirety of the Chumaks NFA firearm inventory, without cause for doing so, and for over two years, and repeated requests from the Chumaks, and their lawyers, for information about which specific laws they were being accused of having broken, and upon which their personal property had been taken, none of the agents, or the  Agency's Counsel, could identify any specific statutory violations which had allegedly occurred.

31

(e).  What is even more shocking is that Mr. Orlow, despite his position as a

senior litigator, and  Associate Chief Counsel for the BATF, chose to continue the

practice of obfuscation and deception, in regards the repeated statement by agents of

the  BATF (to include Special Agents and Counsel) that  grounds existed upon which

legitimized SA Rivera's taking of the  62 NFA firearms from the plaintiff on July 21, 2008,

and warranted the firearms continued detention by the BATF, when he stated:

> (1). "*The property was used in or involved in a violation of the federal firearms laws";* and,
>
> (2). *"We are not at liberty to discuss the case further due to restrictions under the Internal Revenue Code, 26 U.S.C. Chapter 53*."     (**Exhibit [J]**, pg. 2, lines 1-3)

> —As for the first statement, Mr. Orlow is carrying on the same pattern as
>
> Ms. Bossa there she stated "*the evidence established that the firearms*
>
> *have been involved in a violation of the NFA*" (See para. 42,  **Exhibit [G]**,
>
> supra)  yet when Counsel for the Chumaks repeatedly asked for
>
> clarification (See para.44,  **Exhibit [I]**, supra) of this claim that there had
>
> been a violation of the law, and a specification of the statues alleged to
>
> have been violated, both Ms. Bossa, and now Mr. Orlow, refuse to provide
>
> the specificity for the alleged criminal act, that due process requires.

Under the NFA there are certain prohibited acts as set out in 26 USC §5861, to wit:

> "It shall be unlawful for any person—
> (a) to *engage in business as a manufacturer or importer of, or dealer in, firearms*
>     without having paid the special (occupational) tax required by section 5801
>     for his business or having registered as required by section 5802; or

(b) to *receive or possess* a firearm transferred to him in violation of the provisions of this chapter; or

(c) to receive or possess a firearm made in violation of the provisions of this chapter; or

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or

(e) to transfer a firearm in violation of the provisions of this chapter; or

(f) to make a firearm in violation of the provisions of this chapter; or

(g) to obliterate, remove, change, or alter the serial number or other identification of a firearm required by this chapter; or

(h) to receive or possess a firearm having the serial number or other identification required by this chapter obliterated, removed, changed, or altered; or

(i) to receive or possess a firearm which is not identified by a serial number as required by this chapter; or

(j) to transport, deliver, or receive any firearm in interstate commerce which has not been registered as required by this chapter; or

(k) to receive or possess a firearm which has been imported or brought into the United States in violation of section 5844; or

(l) to make, or cause the making of, a false entry on any application, return, or record required by this chapter, knowing such entry to be false."

—There is no evidence  that Dr. Chumak had engaged in  any of

these prohibited practices or had engaged in any business as a *dealer*

of firearms, or that he had *received or possessed* any firearms *after* his

firearm business was transferred to his wife -- with the full awareness

and approval of the US Attorney, and the BATF and *after* the BATF

approved her application for licensure as an FFL with SOT status. (See

para's 16-18,20, supra). Dr. Chumak's sole role was, due to his

extensive background knowledge, to act as an advisor for his wife.

While Dr. Chumak could no longer posses a firearm, he was certainly

allowed under law to exercise his 'ownership'  rights to the firearms that

had been in his inventory, and were now in the inventory of his wife,

where non-possessory ownership rights, and the right to sell property

existed, and as long as the sale of said firearm was to a person or entity

that would not allowed constructive possession.

See *Henderson v. United States, 575* U.S. 622, 135 S. Ct. 1780 (2015) (a convicted felon may transfer a firearm to whomever he chooses, as long as the court is satisfied that the recipient will not allow the felon to exercise constructive possession by having access to the firearm or directing its use)

—All of the statements by the BATF officers and agents about

purported violations of the law were merely conclusory and  without a

proper evidentiary foundation.   Due process demands that the BATF

proffer some sort of factual basis, and reference *with specificity* to an

actual statute or regulation that has been violated, in order for the Plaintiff

to be lawfully dispossessed of her firearms. The making of a conclusory

statements by Ms. Bossa, and Mr. Orlow, that a violation of the law has

occurred, and then being unable or unwilling to identify what laws have

actually been broken, or identify the evidentiary foundation upon which

their conclusion was being  drawn, knowing that no such evidence exists,

and no such violations were made, is the making of a false statement.


"18 U.S.C. § 1001, (effective October 11, 1996) reads as follows: (a). Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully -- (A). *falsifies, conceals, or covers up by any trick, scheme, or device a material fac*t; (B) *makes any materially false, fictitious, or fraudulent statement or representation*;  or  (C) *makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;*  shall be fined under this title or imprisoned not more than 5 years, or both." While Subsection (a) does not apply to a party to a judicial proceeding, it does, however,  apply to an administrative forfeiture cause of action such as in the instant case.

— As for Mr. Orlows second statement, that he was "not at liberty to discuss the case"; the statute to which he refers has no such prohibition for administrative proceedings but only that information, or evidence obtained from the compiling of records, etc. cannot be used for a criminal prosecution against the dealer who has compiled the records; but can only be used against the dealer for a " furnishing of false information" charge.

See 26 U.S.C. §5848(a) which states "No information or evidence obtained from an application, registration, or records required to be submitted or retained by a natural person in order to comply with any provision of this chapter or regulations issued thereunder, shall, except as provided in subsection (b) of this section, be used, directly or indirectly, as evidence against that person in a criminal proceeding with respect to a violation of law occurring prior to or concurrently with the filing of the application or registration, or the compiling of the records containing the information or evidence"; and §5848(b) sets out that "Subsection (a) of this section shall not preclude the use of any such information or evidence in a prosecution or other action under any applicable provision of law with respect to the furnishing of false information.

—It appears that Mr. Orlo is trying to carve out a loophole by which he is not required to provide the factual or legal foundation justifying the BATF's taking of property because of his mere allegation that there was a violation of law and a potential for criminal charges against a party involved in the case. This is exactly the kind of governmental action that CAFRA was put in place to prevent. Under that statute, the government may take private property based upon mere hearsay evidence. But the law then sets in motion strict timelines for the initation of administrative or

judicial action against the property and if they fail to meet those deadlines,

or do not have sufficient evidence by which to levy criminal charges, or

judicial forfeiture actions against the parties involved, they are required by

the statute to return the property it to the party from whom it was taken.

(See para. 41, CAFRA discussion, supra).

(f). Despite Mr. Orlow, knowing that Mrs. Chumack was the party from whom the NFA

weapons were taken, he tries to disavow his knowledge as she was not listed as a party

in the first petition that was submitted to the agency based upon the agency's

notification of forfeiture to Dr. Chumak. This is disingenuous. The fact that the GCA

imposes a 120 day requirement for the agency to file a Notice of Forfeiture, and the fact

that their original Notice of Forfeiture was not sent until **December 12, 2008,** which was

**145** after the taking on **July 21, 2008**, but was not sent to the party from whom the 62

NFA firearms were taken, and was **15 days** beyond the mandatory submission deadline

required by the statute, the  including of Dawn Chumak in an already late filed forfeiture

proceeding, does not cure the fact that the government was  required by CAFRA to

return the weapons that had been taken from Dawn Chumack when the government

missed the mandated 120 day deadline for providing notice of a forfeiture proceeding to

the party from whom the property was taken.( See sub. para (c), supra)

( 18 U.S.C. § 983(a)(1)(F) ""If the Government does not send notice of a seizure of
property in accordance with subparagraph (A) to the person from whom the property
was seized, and no extension of time is granted, *the Government shall return the
property to that person without prejudice to the right of the Government to commence a
forfeiture proceeding at a later time); and*

United States v. Ninety-Three (93) Firearms, 330 F.3d 414, 417 (6th Cir.2003)
(requirement in 18 U.S.C. § 924(d)(1) that forfeiture of firearms or ammunition must be
commenced within 120 days of seizure is satisfied by commencement of either
administrative or judicial forfeiture proceedings within that period); United States v.
Twelve Firearms, 16 F. Supp. 2d 738,740-41 (S.D. Tex. 1998) (same)

47. **December 7, 2010** in response to Mr.Orlow's suggestion that Dawn Chumak file her
own Petition for Remission or Mitigation of Forfeiture, attorney Johnson submitted such
a petition naming Dawn Chumack as the petitioner. In this petition, Attorney Johnson set
out both the factual and legal grounds for mitigation and remission and reiterated the
fact that the BATF had failed to identify any substantive violation of the law which had
occurred. Attorney Johnson also stated that "the Agency was obligated to set forth not
only why the property is subject to forfeiture, but a factual basis for the allegation. No
sworn affidavit or judicial finding has been provided by the agency, which demonstrates
that the property was used in a crime, was purchased with ill-gotten gains, or was
otherwise subject to forfeiture. Petitioner is entitled to be on notice of a substantive
allegation, built on facts – not conclusions so that she may properly defend forfeiture
action." (See pg. 2, para. 1, **Exhibit [K]**).

48. On **September 29, 2011** the plaintiff, submitted a letter to the associate chief
council, Mr. Orlow inquiring about the status of her petition. The plaintiff stated "it is my
hope that this matter may be soon fully resolved, and the entire inventory properly
returned." (See **Exhibit [L]**).

49. On **November 28 2011** the plaintiff received a letter from the BATF acknowledging
the receipt of her timely application to renew her FFL under title 18 USC, Chapter 44,

and 27 CFR § 478.45. In this letter, the Chief for the Federal Firearms Licensing Center, stated that "until such time as the ATF completes processing your application [] this letter [LOA] will serve as your license until we complete action on your renewal." The chief also informed the plaintiff that "If at the end of the six months, you have not received your renewed license or another LOA to continue operations, please contact the examiner []." (See **Exhibit [M]**).

50. On **January 13, 2012** the plaintiff submitted a letter to the Chief, of the Asset Forfeiture and Seized Property Division of the BATF, requesting "an update on the status of the requests made to return the assets seized from me in July 2008 by ATF Special Agent Rivera." The plaintiff also stated "the legal registration, and possession, of these assets has been verified by ATF and NFA. On August 13, 2010, my Attorney Mr. Williams Johnson sent you a detailed request for reconsideration of our Petition for Remission, accompanied by supporting documentation. We have been waiting for 17 months for a reply and return of my assets." (See **Exhibit [N]**)

51. On **May 24, 2012** the Plaintiff received another LOA from the chief of the federal firearms licensing center. (See **Exhibit [O]**)

52. On **May 25, 2012** the Plaintiff submitted her 2013 **NFA Special Tax Renewal Registration and Return** to include a $500 check for the special tax that was due. (See **Exhibit [P]**). This special tax payment was made in order that the plaintiff could retain her SOT license, and thereby receive the 62 NFA firearms that had been taken from her

38

on July 21, 2008 by agent Rivera, put them up for sale, and once sold & transferred to another dealer, close her firearms business.

53. In **2012 and 2013** the BATF made several offers of compromise for the return of the plaintiffs 62 NFA firearms. Their first offer was to merely reimburse her for the cost of each tax stamp that was paid on these items. (See **Exhibit [Q]**, where BATF listed the value of each firearm as being $200) That would be approximately $200 for the 65 stamps for the 62 firearms as some of the firearms required 2 stamps per item. The total value of this first offer was approximately $13,000 which not an acceptable given that she lawfully owned the 62 NFA firearms The 62 NFA firearms were estimated to be worth approximately $500,000. The fact that the Plaintiff had paid the tax stamps for each firearm and retained copies of her ATF Form 3 and Form 4  transfer documents (See **Exhibit [D]**, supra) with the stamps attached, proved her title to the 62 NFA firearms and she knew that if she had relinquished those documents, and those stamps, she would have relinquished her title to those firearms.

The BATF second offer in regards to the return the 62 NFA firearms, was that they would return the NFA firearms, but not ALL of the NFA firearms they had taken from the plaintiff on July 21, 2008.  In this second offer the stated that they would return  51 of the 62 firearms and retain 11 of the most valuable pieces in the inventory. (See **Exhibit [R],  List of Eleven Machine Guns SA Rivera Compiled for Agency Retention**) which included several highly prized and historical firearms in her inventory. The firearms the BATF wanted to keep were as follows:

**\*\* NOTE:** Values listed here are 2008 estimates.  The estimates at the time of their

destruction was substantially higher.

### ELEVEN NFA ITEMS (TEN VALUABLE & RARE MACHINE GUNS)
### THE BATF WANTED TO KEEP  FOR THEIR  "PROP GUN" INVENTORY
### AND USE FOR UNDERCOVER OPERATIONS

AK-223 223 caliber Machine Gun, 12" barrel with under folding stock
SN PF85001081 - Conversion of AKS-223 by Fleming Firearms of Collinsville, OK
$11,000 - Form 3 pending transfer to DS
Thompson 1928A1 45ACP Machine Gun, 10.5" finned barrel
SN 2178 A - Original machine gun by Auto Ordnance of West Hurley, NY
$25,000 - Form 3 pending transfer to DS

Winchester Paratrooper: M-1 30 caliber  Machine Gun with side folding stock
SN 5796607 - Original Winchester manufactured SMG
$8,000 - Form 3 pending transfer to DS

MK760 9mm Machine Gun, phosphate finish with side folding stock
SN C0454 - Original MK Arms (Irvine, CA) manufactured machine gun
$8,500 - Form 3 pending transfer to DS

M-10 9mm Machine Gun
SN 2-2001607 - Original Military Armament Corp (MAC of Marietta, GA) SMG
$3,000 - Form 3 pending transfer to DS

Ruger 10/22 22LR Machine Gun - Norrell Auto Sear WITH mated Norrell Suppressor
SN 2245 (sear) / SN S-4693 (suppressor) - on TWO separate NFA transfer forms !
Auto Sear Registered Ruger 10/22 by S&H Arms of Tulsa, OK, & rework by NORRELL
Both registered by John Norrell  Arms, Little Rock, AR
$9,500 - Two Form 3 pending transfers to DS
H&K MP-SSD (Model 92S) 9mm INTEGRALLY SUPPRESSED Machine Gun
SN 7085 - Registered Receiver & Suppressed configuration by Hard Times Armory
$15,000 - Form 3 pending transfer to DS

H&K MP-5 (Model 94) 9mm Machine Gun
SN 8105 - Registered Receiver - Heckler & Koch original Model 94 by Allitech, USA
$12,500 - Form 3 pending transfer to DS

UZI 9mm Machine Gun
V SA58321 - Registered Receiver conversion by Fleming Firearms of Collinsville,
$10,000 - Form 3 pending transfer to DS

H&K G3SG1 7.62mm Machine Gun **Dealer Sample**
SN 17T524 - Original Heckler & Koch G3SG1 military cased set
$13,000.

The following is the list of items that the Agency had taken on July 21, 2008, but would return to the Plaintiff and, thereby, tacitly admit the BATF had no legitimate claim of ownership or vested title:

**FIFTY ONE NFA WEAPONS — TO INCLUDE
FULLY TRANSFERABLE MACHINE GUNS/SUPPRESSORS/SHORT-BARREL
RIFLES/SHOTGUNS SHOTGUNS/PEN-GUNS— THE BATF OFFERED TO RETURN
TO THE DAWN CHUMAK — THUS INDICATING NO REAL CONCERNS ABOUT
THE  LEGALITY OF THE CHUMAK NFA FIREARM TRANSACTIONS
OR QUESTIONS ABOUT HER VESTED TITLE**

### FULLY TRANSFERABLE MACHINE GUNS (14)

COLT AR-15 223 Machine Gun, 16 ½" barrel and collapsing CAR stock
SN SP170156 - Conversion of Colt CAR-15 by SWD of Atlanta, GA
Lower receiver inscribed "CHUMAK" and "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"
$15,000 - Form 4 pending transfer to JC

 AK-22 22LR Machine Gun, 17¾* barrel
SN 015145 - Conversion of AP80 by SWD of Atlanta, GA
$8,500 - Form 3 pending transfer to DS

H&R  M-16A1 556mm Machine Gun
SN 2005821 - Original by H&R, USA $16,000 - Form 3 pending transfer to DS

STEN MK-II 9mm Machine Gan, 7.5" barrel
SN ST0019 - D.L.O. (Stamford, CT) manufactured machine gun
$5,000 - Form 3 pending transfer to DS

MK760 9mm Machine Gun, rare "police black" finish with side folding stock SN C0537 - Original MK. Arms (Irvine, CA) manufactured machine gun $8,500 - Form 3 pending transfer to D$

M11-A1 .380ACP Machine Gum
SN 85-3800459 - Original S.W.D. (Atlanta, GA) manufactured machine gun
$2,500 - Form 3 pending transfer to D$

M11-A1 380ACP Machine Gun
SN 85-3800131 - Original S. W.D. (Atlanta, GA) manufactured machine gun $2,750 - Form 3 pending transfer to DS

M11 9mm Machine Gun
SN 86-0010942 - Original S.W.D. (Atlanta, GA) manufactured machine gun
$2,500 - Form 3 pending transfer to DS

M-10 .45ACP Machine Gun
SN 1-3006501 - Original R.P.B. Industries (Atlanta, GA) manufactured SMG
$2,750 - Form 3 pending transfer to DS

American 180 22LR. Machine Gun - with rare blued finish & wood stock SN B01145 -
Original American Arms, Salt Lake City, UT, manufacture
 $9,000 - Form 3 pending transfer to DS

H&K MP-5 (Model 94) 9mm Machine Gun
SN 8095 - Registered Receiver - Heckler & Koch original Model 94 by Alltech, USA
$12,500 - Form 4 pending transfer to JC

HSK MP-S (Model 94) 9mm Machine Gun
SN 252 - Registered Receiver conversion by Phoenix Arms of Houston, TX
$11,500 - Form 3 pending transfer to DS

M-14 .380 Machine Gun
SN 449491 - Original US Army contract by Specialty Arms of Springfield, OH
$12,000 - Form 3 pending transfer to DS

10/22 22LR Machine Gun Auto-Sear / NOT installed
SN 609 - Registered Auto-Sear by AWC Systems Technology of Phoenix, AZ
$4,000 - Form 3 pending transfer to DS

**"PRE- MAY" DEALER SAMPLE MACHINE GUNS - (2)**

UZI 9mm Machine Gun - Rare "green" configuration
SN 097530 - Original Israel Military Industries manufactured machine gun
$5,000

H&K MP-5 9mm Machine Gun
SN C318997 - Original Heckler & Koch manufactured machine gun
$7,000

**SUPPESSORS & SUPPRESSED WEAPONS & NON MACHINE GUN SUPPRESSED
WEAPON COMBINATIONS - (23)**

RUGER 780 Suppressed Bolt-action 22LR Rifle - S/N S18714879 Attached suppressor
manufactured by Jonathan Arthur Ceiner of Titusville, FL
$950

REM 700.380 Suppressor - S/N SC6367877
For Remington 700 Rifle - Manufactured by Jonathan Arthur Ceiner, Titusville, FL
$900

SO-T 9mm Suppressor - S/N 92610.
For Beretta 92F 9mm pistol & similar - By Precision Arms International of Saluda, VA
$750

AR-15/M16 .223 Suppressor —SN N400
for AR-15/M16 weapons —Manufactured by G.U.N. Technology of Coolidge, AZ
$700

AK-22 22LR Suppressor - S/N AK024
For AY -21 8 AP80 series of weapons. - Manufactured for S. W.D. of Atlanta, GA

M11 380ACP Suppressor - S/N S456
For M11-Al machine gun - Manufactured by S. W.D. of Atlanta, GA

M11 .380ACP Suppressor - S/N S481
For M11-Al machine gun - Manufactured by S.W.D. of Atlanta, GA
$400

M11 9mm Suppressor - S/N N1337
For M11 machine gun - Manufactured by S. WD. of Atlanta, GA
$400

M10 .45ACP Suppressor - S/N S561
For M-10 Machine Gun - Manufactured by R.P.B. Industries of Atlanta, GA

Ruger 10/22 ULTRA .22LR Suppressor - S/N F-26
or Ruger type mounts - Manufactured by A WC Systems Technology of Phoenix, A

Ruger 77/22 ULTRA 22LR Suppressor - S/N F-155
For Ruger type mounts - Manufactured by AWC Systems Technology of Phoenix, AZ
$550 - Form 4 pending transfer to JC RB-22 22LR

Suppressor - S/N S5890
For Ruger type mounts -Manufactured by Blaylock's Gun Works of Gun Barrel City, TX

CQB 5.56mm Suppressor - S/N D-495
For 5.56mm barrels - Manufactured by AWC Systems Technology of Phoenix, AZ

Sierra 22LR Suppressor - S/N 94237 (empty stainless steel registered tube )
For Ruger type mounts - Manufactured by S. W.I,S.S. Technology of San Antonio, TX
$100

Amphibian 22LR Suppressor - S/N F-051
rushed Stainless Steel Suppressed Ruger PISTOL - By AWC Systems Technology, AZ
$950

Amphibian .22LR Suppressor -S/N F-052
Brushed Stainless Steel suppressed Ruger PISTOL - By AWC Systems Technology, AZ
$950

UZI 9mm Suppressor - S/N UZ374
For UZI type weapons - Manufactured by Costal Gun of Brunswick, GA
$500

UZI 9mm Suppressor - S/N SUZI-91
Matched to UZI S/N SA58321 SMG - Made by Jonathan Arthur Ciener of Titusville, FL
$500 - Form 3 pending transfer to DS

ARCHANGEL 111 .22LR Supressor - S/N 981169
For Beretta .22 pistols - Manufactured by AWC Systems Technology of Phoenix, AZ
$450

Abraxas 9mm Suppressor - S/N 98123:
For 9mm pistols - Manufactured by AWC Systems Technology of Phoenix, A

TAC 65 22LR Suppressor - S/N 5929
For Walther P-22 pistol - Manufactured by Tactical Innovations of Glen Burnie, MD
$300

P22 22LR Suppressor - S/N CSS225811
For Walther P-22 pistol - Manufactured by Triple Break Products of Merrimack, NH
$300

SOS45 .45ACP Suppressor - S/N S98-3972
For H&K USP45 Tactical Pistol Set - Manufactured by Gemtec Inc of Boise, ID
$850

## SHORT BARRELED WEAPONS / ANY OTHER WEAPON - (9)

US Marshall's Witness Protection WP-870 12GA Shotgun - pistol grip and 12.5" barrel
S/N W845108M.  Manufactured by Automatic Weaponry of Brentwood, TN
$1,250 - Form 4 pending transfer to JC

Mossberg 500-A 12GA Purp-Shotgun - pistol grip and 12 ¾" barrel
S/N K293300.      Manufactured by Cobray Firearms of Smyrna, GA
$750

Cruso Single Barrel 12GA Shotgun - 11 ½" barrel & pistol grip. Overall 18 1/4 " length
S/N A448184        Registered by Charles Erb, Jt., of Fredericksburg, PA
$400

UZI 9MM Short Barrel Rifle- Norinco Model 320 Semi-Auto UZI with 10" barrel
S/N MSA04655LL95-1.        registered by Farnsworth Arms of Templeton, PA
$850

Coach 12 12GA Double Barrel Shotgun - 10" barrel "coach shotgun"
SN 97000156.          Registered by Farnsworth Arms of Afton, TN
$550

Colt Match AR-15 Target 223 Short Barrel Semi-Auto Rifle- Lower Reciever
S/N CMH018810.      Manufactured by Colt's Manufacturing Company of Hartford, CT
$750

Model 4-353 22LR Semi-Auto Short 5" Barrel Rifle (25" overall weapon length)
S/N 1153662.          Manufactured by ATC of Las Vegas, NV
$250

H&K FP-6 12GA Short barrel (14") Pump Police Assault Shotgun
S/N 633201.        Manufactured by Heckler & Koch of Sterling, VA
$1,250

CN 12GA Shotgun - 16" barrel and 32" overall weapon length
SN 168405.          Manufactured by Newport Arms, USA
$450

## PEN GUNS / OTHERS (3

Quicksilver 22LR Pen Gun - very rare "pen light / pen gun"
S/N QSM47      Manufactured by Quicksilver Manufacturing of Twin Falls, ID
$450

Pen Fire 22LR Pen Gun - very rare "writing pen / pen gun"
S/N 0036      Manufactured by Pen Fire of Loveland, CO
$500

Model AAF Multi-Caliber ( 25ACP, 32ACP, 380ACP) Pen Gun
S/N PG024.          Manufactured by R&R Enterprises of Pasadena, MD
$500 - Form 4 pending transfer to JC

Attorney Johnson was the one who had been negotiating for a return of the Chumack property, with the the partial return of the NFA weapons have been submitted in the form of a "settlement agreement" that the plaintiff refused to accept because of the unreasonableness of such an offer. For the plaintiff, it was a very clear negotiation, she owned the property before it was taken, she had proof of ownership in the form of the ATF Forms 3 and 4 with the tax stamps proving her ownership, she had never knowingly, or intelligently waved, or given up her right of ownership to that property, and there had been no proceeding that she was aware, of either administratively or in any judicial forum, where her right of ownership had been forfeited, relinquished, or had ever been determined to be invalid, which leads to the logical conclusion that her property, all of her property, was to be returned to her.

Just like the agency had refused to provide any justifiable grounds for the initial taking of the her NFA inventory, or for the agencies continued detention of that property after multiple requests to have that property returned — the BATF refused to provide any rational justification for returning a majority of the NFA items yet arbitrarily and capriciously withholding the most valuable items in the inventory for themselves. The fact that the BATF had finally agreed to return a major portion of the NFA inventory was a tacit admission by that the agency that there was nothing improper in regards to her conducting business as an FFL licensee with SOT status, which leads to the obvious conclusion that the BATF had no lawful right to continue to detain any of her property. The 11 items that the Agency had chosen to retain for themselves had not been illegally

owned by the Plaintiff,  or had been involved in any crimes, or unauthorized transactions, while she owned them, and the BATF had no right to keep them.

As direct negotiations with the BATF, through Attorney Johnson, had failed, the Plaintiff sought other means by which to have her property returned, and  submitted a petition to the Honorable William Flores, Congressman for the 17th Congressional District of Texas.

54. On **May 28, 2015 the BATF** submitted a response to the congressional inquiry. ( See **Exhibit [S]**)  In that response, the Assistant Director of Public and Governmental affairs, **Mr. Christopher C. Schaefer**, for the BATF tried to describe the business relationship between the plaintiff and Dr. Chumak, as if it was something just discovered in 2008, when in fact it had been well known by the BATF, and the US Attorney's office since 1993, when Dr. Chumak was convicted of a felony, the Plaintiff was granted her FFL and SOT status, and all of Dr. Chumak's firearm inventory was transferred to her: and then relied upon  in 1995 the by the agency when they sought  the Plaintiff's assistance with the disposition of the Cox estate, where a weapons collection had been stolen, and then recovered, but needed a licensed FFL/SOT firearms dealer to handle the estate transactions, and thoroughly vetted the Chumaks as operating within the boundaries of the law. (See para's 16 - 20, supra).

Mr. Schafer falsely states, three times, that the Plainftiff had "abandoned" the 62 NFA firearms (id at lines 15,23, & 35) when that had never been the case, as the condition of abandonment had already been excluded by the US Attorney Fraizer and Attorney Johnson prior to the "taking" of the inventory by SA Rivera and "an agreement

is reached between Mr. Frazier and Mr. Johnson that any, and all, firearms that Agent Rivera will demand on July 21st will be given to him for possession - but that they will not be surrendered or forfeited by Dawn Chumak while everyone has an opportunity to resolve the matter administratively." (See para. 36, supra) Mr. Schafer states "On July 21, 2008, Ms. Chumak voluntarily abandoned 62 firearms to the ATF in the presence of her attorney, Mr. Thomas West" the mere presence of an attorney does not imply "abandonment" or "voluntary surrender" of the right of ownership, as opposed to that of mere possession, when Counsel for the Plaintiff and for the government had already excluded any waiver of any ownership rights. (Id.) In fact, the transfer of inventory documentation (See **Exhibit [A]**) that was created on the date that the 62 firearms were transferred to SA Rivera, and he took physical possession of them, does not indicate any relinquishment of title or ownership, as opposed to that of mere possession. Likewise, nothing in the subsequent acts of the plaintiff, where she repeatedly, over the course of many years, asked for her property to be returned to her, indicates she abandoned her right of ownership or title. And the only document that was ever produced, where the word "abandonment" had first appeared, was on a late "Reciept for Property" provided by SA Rivera, over 8 months after he took the firearms, and approximately 3 months *after* forfeiture proceedings were initiated against Dr. Chumak, that SA Rivera fraudulently back-date to the date he had taken the firearms, in order to create the illusion of 'Abandonment" when no such condition actually existed. (See para's 39, 41 supra)

Mr. Schafer then goes on to say that "Mrs Chumak requested the return of these firearms" (**Exhibit [S]** line28) which, ironically, does *not* support any their conclusion

48

that Mrs. Chumak had waived her ownership rights through their fabricated "abandonment" ploy (described supra) and that "ATF [had] vested title to these firearms" despite the fact that there had been no proceedings, either administrative, judicial, or otherwise, by which title had been 'divested' from Mrs. Chumak. Mr. Schafer is simply making another false conclusory statement in the absence of any supporting facts upon the record, or foundation in the law when there was no "abandonment" of ownership rights by the Plaintiff. His subsequent statement, that there was a "matter' to to resolve, by offering the "return" of the firearms to the Plaintiff, throws his first premise into the wind, because if the BATF truely had some form of vested title, there would not be anything to resolve, and they they certainly would not have had an obligation to return any of the firearms. The BATF tacitly admits two things by their offer to return the NFA firearms:

—Firstly, that they had no grounds upon which to continue to hold the NFA firearms based upon a claim of vested title, as it is clear from the record that there had been no "right of ownership" that had been knowingly, intelligently, or voluntarily relinquished or waived by the the Plaintiff when she went into a "transfer" of "possession" to SA Rivera on July 21, 2008 with counsel for both sides assuring her on July 18, 2008 that she would *not* be surrendering, abandoning or forfeiting her ownership rights merely by letting him take the firearms into his possession after he demanded them from her and persistently held onto that right by making repeated requests for their return, and took steps to assure that she was properly licensed so as to be able to sell those firearms to other FFL/SOT firearms dealers once they were eventually returned to her. A

temporary 'abandonment' of the right to "possess" the firearms, while administrative proceedings are ongoing for their return, does not equate to the 'abandonment' of a right to own & sell the firearms.  Counsel for the BATF know full well that the the "vested title"  follows the individual who has proof of of the right of ownership, and who  persistently asserts that right over time; they also know and that such a right does not subsequently fall to a usurper who has, without more, merely taken posession of the property.

—Second, where the BATF was returning the NFA firearms back to the same circumstances from which they had been taken, where the Plaintiff is a licensed FFL and SOT firearms dealer who has physical "possession' of the NFA and GCA firearms and performs all the material handling & storage of the firearms  in preparation for the sale, and transfers thereof,  to the firearm dealers approved by the BATF for said transfers;  and with Dr. Chumak's sole role as being a 'non-possessory' advisor as to:  (a) the market values of the firearms; and (b) helping to find vetted third party firearm dealers willing to pay market price for the NFA firearms in the Chumak inventory and, thereby, even as felon — lawfully exercise his retained right to assist in the sale of said inventory to independent  third party firearm dealers — and Dr. Chumak is not placed in actual or constructive possession of said firearms as a result of the sale;

— and Finally, although not related to the NFA firearms, the BATF has made a rather substantial tacit, if not outright admission that there was never any true factual or legal foundation for their oft repeated claims that:

     (*i*). there had been "violations of the Gun Control Act (GCA) and the National Firearms Act (NFA) being committed by Federal firearms

licensee (FFL), Dawn Chumak. On May 18, 2009, ATF interviewed Mrs. Chumak, and during this interview, she admitted, in sum and substance, that she had improperly obtained her FFL at her husband's, Dr. Bogdan Chumak, direction and request. She explained that she obtained her FFL so Dr. Chumak could continue to operate a firearms business under her name after he lost his firearms license due to a felony conviction"

(**Exhibit [S]**);

(*ii*). "On July 21, 2008 at 1175 Westgate I Rd, Eddy, TX, the property described above was seized for forfeiture by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). *The Property was used or acquired in violation of 26 USC Section 5872.*" (emphasis added) and the NFA statue only proscribes specific acts where, inter alia, a person "engages in business as a [] dealer without having paid the [SOT] tax"; "receive or possess" an NFA firearm transferred/made/unregistered in violation of the chapter;transfer/make/alter serial numbers, etc— all of which was cleared during compliance inspections;

(*iii*)."The [NFA] firearm(s) [were] used in or involved in a violation of the federal firearms laws. We are not at liberty to discuss the case further due to  restrictions under the IRC 26 USC Chapter 53." (Despite there being no such restrictions.)(See para. 46(e), **Exhibit [J]** supra);

[*iv*]. ATF opened an investigation into the federal firearms licensee Dawn Cherie Chumak in April 2008 after receiving information from a citizen that Mrs. Chumak obtained her Federal Firearms License so that her husband, a convicted felon, could continue to operate a firearms business under her name." (See **Exhibit [T]**)

When the BATF took only the most valuable portion of the Chumaks

firearm inventory, i.e. the NFA weapons—the most highly regulated firearms in

the United States— yet left the entirety of the less regulated GCA inventory intact

for the Chumaks to continue to dispose of, as they wished, such action by the

BATF indicate clear  tacit approval of the Chumaks firearm business and shows

there was no genuine concern about  illegal activity, taking place on the part of

either Dawn or Dr. Chumak.  As set out in more detail further below, if the ATF

was concerned about illegal activity, or of a felon participation as a non-possessory owner of a firearm business, they are required by law to either seek a criminal indictment, or initiate forfeiture proceedings against the owner of the firearm and in the instant case, they did neither, and by leaving the entire GCA inventory to be sold by the Plaintiff, indicates there was no true concern, or risk, for criminal activity.

Mr. Schafer then goes on to say that in December 2013 [and in November 2014] they had "offered the return of 51 of the 62 firearms to Mrs. Chumak" and had gotten no response, when in fact there had been plenty of responses, just not an acceptance of the "partial return" that they were offering. (See para. 53 supra)

Mr. Schafer then concludes:"Mrs. Chumak voluntarily abandoned these firearms to the ATF and ATF now owns these firearms (41 CFR § 102-41.80). Accordingly, ATF considers this matter closed."

— Again, there is nothing in the record, except a fraudulent document created by SA Rivera in order to create a condition that did not exist at the time of the taking of the firearms on July 21, 2008, nor at anytime after, ie the condition of abandonment by the Plaintiff. /a claim of abandonment can be supported by circumstantial evidence, but in the instant case, there is overwhelming evidence that the Plaintiff has asked for the return of her firearms at nearly every juncture in the case, that the BATF undertook none of the procedural or statutory steps by which they could have become vested with title, and at no time has the Plaintiff voluntarily surrendered and relinquished all rights, title, and interest in and all

claims to [the 62 NFA firearms] or consented to forfeiture, or waived her right to

receive notice of forfeiture or any other rights available under law.

41 CFR § 102-41.80 sets out that "Personal property is voluntarily abandoned
when the owner of the property *intentionally and voluntarily gives up title to such
property* and title vests in the Government. The receiving agency ordinarily
documents receipt of the property to evidence its voluntary relinquishment.
Evidence of the voluntary abandonment may be circumstantial." (emphasis
added)

There is nothing in the record that indicates the Plaintiff intentionally or voluntarily

gave up title to the 62 NFA firearms on July 21, 2008, or any time after. As set out on

July 18, 2008, prior to the date of the relinquishment of possession, counsel for both

sides agreed that the firearms demanded by SA Rivera "will not be surrendered or

forfeited by Dawn Chumak while everyone has an opportunity to resolve the matter

administratively." The giving up of the right of "possession" to SA Rivera, without more,

does not give up the plaintiff's right of ownership and title.

55. On **August 20, 2015**   The BATF submitted a second letter to Congressman Flores

(See **Exhibit [T]**) repeating the claims of "abandonment" (id. Line 13)  despite the

dearth of any evidence to support such a conclusion, especially where:

> (a). The  condition of "abandonment" had been specifically excluded
>
> where  "an agreement [had been] reached between Mr. Frazier and Mr. Johnson
>
> that any, and all, firearms that Agent Rivera will demand on July 21st will be given
>
> to him *for possession - but that they will not be surrendered or forfeited by Dawn
>
> Chumak while everyone has an opportunity to resolve the matter
>
> administratively*".(See para. 36 Supra );

(b). There has been an absolute failure of the BATF to produce any "Consent to Forfeiture or Destruction of Property and Waiver of Notice," ATF Form 3400.1, or similar form used by the BATF at the time of the case —which typically uses exacting  language to expressly inform a party of the very specific rights of property ownership that they are waiving; (See **Exhibit [U]**)

(c). The only document which memorialized the "transfer" the NFA firearms from the Plaintiff to SA Rivera on the date of the transfer, **July 21, 2008**, *and was signed by SA Rivera on the actual date of the transfer* (given that the inventory list had been produced by the Plaintiff and handed to SA Rivera on that date) *only indicates that SA Rivera understood that he had "recieved posession of the listed recorded property items"* (See **Exhibit [A]**, lines 1-2) *and there is nothing on that document indicating any type of "abandonment" or "waiver" of any of the Plaintiff's "right of ownership" as to those firearms.* **NOTE:** As the copy of the "Reciept for Property and Other Items" that was presented by SA Rivera on March 16, 2009 (but fraudulently "back-dated" by Rivera to imply a condition of 'abandonment' which did not exist at the time of the transfer (See para. 41, supra))  has had the signature of SA Rivera redacted in accordance with standard FOIA procedures, an un-reredacted copy of the last page of the Reciept has been included here to show proof that the signature on the document produced on the date of the firearms transfer, the Chumak's  "N.F.A. / Class III Inventory Inventory Sheet" ( **[Exhibit [A])** is that of SA Rivera. See **Exhibit [V]** (Proof of SA Rivera's Signature);

After making their claim of "abandonment" which is entirely unsupported in the record, other than the fraudulent Receipt for Property produced by SA Rivera, the BATF the goes on to conclude that, based upon their faulty premise of abandonment, that the "ATF now owns these firearms." (see **Exhibit [T]**, line 16)

The only lawful mechanisms by which the BATF comes into "ownership" is by very specific legal process, such as through forfeiture:

> "[F]orfeiture is the legal process by which title to an asset is transferred to the government, without compensation, because that asset was derived from, used to facilitate, or involved in criminal conduct in a manner that subjects it to forfeiture under an applicable asset forfeiture statute. The government obtains title to the asset upon obtaining: <u>a declaration of forfeiture in an administrative forfeiture proceeding, a judgment of forfeiture in a civil forfeiture proceeding, or a final order of forfeiture in a criminal case.</u>" (italics in original, underlining added). See DOJ's <u>Asset Forfeiture Policy Manual</u>, (2021)(pg.17)

In the instant case, where the BATF failed to obtain any of the defined declarations, judgments, or orders, the BATF clearly did not undertake the requisite process by which to properly obtain title, and the their claim of "ownership" is completely unfounded, and not the result of any legal process. (Note; while the Policy Manual available at the time may have been different, the fundamental framework of the process required for the government to obtain title has been in place since 2000).

And where US Attorney Fraizer's specifically informed SA Rivera that there was no foundation for a criminal case against the Chumaks (See para.'s 32-38, and **Exhibit [B]**, supra):

"Declination: There may be instances in which a prosecutor declines to proceed with a judicial forfeiture after a claim has been filed in an administrative forfeiture proceeding. <u>Once that decision is made and the federal government no longer has a legal basis for holding the seized property (i.e. it is not evidence of a violation of law), the agency that seized the property must return it to the appropriate party</u>, initiate abandonment proceedings pursuant to 28 C.F.R. §

8.10(e), or otherwise dispose of it in accordance with law. In determining the appropriate party to whom to return the seized property, the seizing agency should follow the same guidance for the return of property pursuant to quick release, including providing prompt notification to the appropriate party.

And under § 8.10(e) Referral of claim:

"*Upon making the determination that the seized property will be released* [in the face of a US Attorney who has declined criminal prosecution due to a lack of evidence, and the known property interest of the Plaintiff from whom the firearms were taken] *the agency shall promptly notify the person with a right to immediate possession of the property, informing that person to contact the property custodian within a specified period for release of the property, and further informing that person that failure to contact the property custodian within the specified period for release of the property will result in abandonment of the property* pursuant to applicable regulations. The seizing agency shall notify the property custodian of the identity of the person to whom the property should be released."

Given that the BATF never sent the Plaintiff a timely notice of forfeiture

lodged by the BATF against her property ownership interest in the 62 NFA

firearms, as opposed to any interests of Dr. Chumak, the Plaintiff was never

allowed to defend those rights in a timely manner, or file any requisite claim

in court.

The BATF tries bolster their claim that the property was "abandoned",

by claiming the mere presence of an attorney, acting as a witness to verify a

signature, leads to an acknowledgment of a condition of abandonment their

claim of "abandonment" by stating:

"Enclosed please find ATF's Receipt for Property and Other Items signed by both Mrs. Chumak and her attorney, Mr. Thomas West, acknowledging her abandonment of the 62 firearms at issue. Mr. West was present at the time Mrs. Chumak turned the firearms over to ATF, and his identity was confirmed by

Industry Operations Investigator Rogers Bean using Mr. West's Texas driver's license and date of birth. The enclosed receipt demonstrates that Mrs. Chumak abandoned these firearms to ATF and the United States Government now owns them, pursuant to Title 41, Code of Federal Regulations, Part 102-41.40. Accordingly, ATF considers this matter closed." (Id. lines 18 -24)

The mere presence of Attorney West at the moment SA Rivera memorialized in writing that he "received possession" of the firearms from the Plaintiff (See **Exhibit [A]**), and a pre-existing  agreement was reached on **July 18, 2008** "between Mr. Frazier and Mr. Johnson that any, and all, firearms that Agent Rivera will demand on July 21st will be *given to him for possession - but that they will not be surrendered or forfeited by Dawn Chumak* while everyone has an opportunity to resolve the matter administratively" (See para. 36-38, and **Exhibits [A]** & **[B]**),  followed by the Attorney West's presence where SA Rivera fraudulently backdated the Receipt for Property as being executed on "7-21-2008" when it had been executed 8 months later, on "3-16-09" — and was so annotated by both the Plaintiff and Attorney West, where they also indicated that the 62 NFA firearms were only "taken" on that date and not abandoned.  SA Rivera's insertion of the term "Abandonment" as the basis for the transfer -  on a form produced 8 months later - where there is no indication that either Attorney West, or the Plaintiff even saw or read that annotation — does not then create an ex-post-facto condition of "abandonment" at the time of the transfer.  The BATF's use of the term "abandonment" is merely a ploy by the Agency to imply there were a panoply of ownership rights ceded on July 21, 2008, when all the evidence indicates the case indicates the only right relinquished at the time of the taking was merely the right of "posession" and none of the rights of "ownership."

56. On **August 7 2021**   After encountering numerous setbacks in the attempt to handle

negotiations with the ATF directly through Attorney Johnson, the Chumack submitted a

letter requesting the "Status and Return of Unlawfully Seized NFA Firearms Inventory."

(See **Exhibit [W]**). In this letter, the Chumaks expressed their frustration with the

BATF's failure to provide them any information about the status of their weapons, and

the agencies failure to return the NFA inventory stating, to wit:

> "This matter apparently continues to be unresolved despite your efforts to deal
> with ATF District Counsel Jennie Basile. We have asked you to take any action(s)
> necessary to resolve this matter administratively, by filing a Rule 41 property
> request, or by filing a Bivens Claim for the return of the illegally seized and
> retained property - of substantial worth. We know that Ms Basile has not acted on
> her promises to provide you with promised "documents" and has ignored your
> repeated follow-up requests."

57. On **November 3, 2022**  the Plaintiff submitted another of multiple letters to the BATF

to obtain a copy of the "National  Firearms Registration and Transfer Record" so as to

determine the status of her firearms:

> "The purpose of this letter is to determine the registration status of the following
> sixty-two ( 62 ) NFA Class III items registered under my ownership. These items include
> twenty-three ( 23 ) Fully Transferable Machine Guns, three (3) "Pre-May" Dealer
> Sample Machine Guns, twenty-four (24 ) Suppressors, Suppressed Weapons, and Non
> Machine Gun Suppressed Weapon Combinations, nine (9) Short Barreled Weapons /
> Any Other Weapon, and three (3) Pen Guns / Others. Please refer to attached list of
> registered NFA items with seral numbers and descriptions.
> This request for a copy of my NFRTR record / file is being made in accordance to
> Chapter 3, Subsection 3.4.3, of the electronic National Firearms Act Handbook (July 9,
> 2019). Please note that I have previously made this request on 16 November 2021 -
> without a reply from you." See **Exhibit [X]**

58. On **May 26, 2023** the Plaintiff received a response from the BATF to the letter
submitted on November 3, 2022, where are the BATF simply returned that letter, but
with a annotation placed upon that letter which stated " WEAPONS HAVE BEEN
DESTROYED PER SPECIAL AGENT JONES IN 2016."  See **Exhibit [Y]**


59.  On **June 26, 2023**  the Plaintiff submitted an amendment to a previous request
under the Freedom of Information Act (FOIA) for copies of all records relating to the
destruction of the firearms. See **Exhibit [Z]**


60. On **June 25, 2024** after having received verification under the FOIA that the weapon
had, indeed, been destroyed, the plaintiff submitted an administrative tort claim
(Standard Form 95) under the Federal Tort Claim Act (FTCA) to the BATF. In that
application, the plaintiff set out the underlying factual and legal basis for her claim and
included documentation and records that she had received in relation to the destruction
of the weapons. See **Exhibit [AA]**

    After the submission of the claim to the BATF, a subsequent review of the record
revealed that 3 of the weapon weapons had *not apparently been destroyed* by the
agency. (Id, pgs. 13 & 14). Those 3 weapons were reported on a "Release and Receipt
of Property" form (ATF E-Form 3400.31) which indicated that the "Resident Agent in
Charge" of those weapons is in the Austin Field Office of the BATF and that those
firearms had been placed in the the "ATF Prop Gun Inventory"  as "Certified Props."

    These three firearms consisted of:

        (1)  an HK MP 5 "Dealer Sample" machine gun (ATF Form 4);

(2)  an integrally suppressed HK MP5 (ATF Form 4);  and,

(3)  an Auto Ordinance Model 1928, A1 Thompson submachine gun (ATF

Form3) (See **Exhibit [BB]**)

61.  On **October 21, 2024** the Plaintiff received a denial (See **Exhibit [CC]**) of her

FTCA Administrative Claim. In that denial Ms. Katherine Bolton, Associate Chief

Counsel for the BATF states, inter alia:

(a)"Your claim has been denied as you are neither a proper party claimant given
that you do not own the property in question having abandoned it to ATF in 2008,
nor is there any evidence that you are acting as the agent or legal representative
of the true owner. See 28 C.F.R. § 14.3(a)"

— this statement is erroneous as it is premised on the BATF being the

lawful owner of the property merely because one of their agents took

possession of the property in 2008. There is nothing on the record of any

abandonment of ownership rights by the Plaintiff either at the time of the

taking, or by an express waiver of said rights, or even suggested by the

Plaintiff's repeated requests for her property to be returned.  The only time

that word/condition appears in the evidentiary record, is when SA Rivera

tried to fraudulently insert it into a document he wanted to claim was

signed on the day of the taking, and not *eight  months later* when he

realized he had no actual authority to continue to hold the firearms, and

the time for seeking that authority through the courts had expired.

  The documentary evidenced does, however, indicate that all of the ATF

Forms 3 & 4s  for the 62 NFA  firearms (**Exhibit [D]**)  assign the Petitioner

as the lawful owner of the property, and the BATF did not initiate any

proceedings against the plaintiff within the timeframes mandated under

the relevant  statutes, whereby-which the Plaintiff *could* have been lawfully

divested of her of her right of ownership but was not, as the agency did

not seek  a declaration of forfeiture in an administrative forfeiture

proceeding, a judgment of forfeiture in a civil forfeiture proceeding, or a

final order of forfeiture in a criminal case.  The  only other means for the

government to declare forfeiture is, after publication, and only for property

where the owner is not known or unavailable, which was not the case

here.  Accordingly, the Plaintiff's title to the firearms, remained intact and

she was, and is, the "true owner" of the property.


(b). " Even if you are a proper party claimant, the claim is barred by the
applicable statute of limitations. Under the FTCA, claims must be asserted
against the responsible federal agency within two years of the date of the
conduct giving rise to the claim. See 28 U.S.C. § 2401(b). In this case, the
firearms were turned over to ATF in July of 2008. Despite knowing since that time
that ATF had possession of the firearms, you did not file an FTCA claim with ATF
until June 25, 2024."

— Again, an erroneous claim, given that the conduct giving rise to the

injury was not the act of  taking in 2008, which had been undergoing a

tortuous but steady multi year administrative battle to get the property

returned, thought counsel, and without, with BATF offers of return, but only

partial return, and all without the presentation of any factual or legal

grounds by the agency justifying the original taking or for giving back most

but not all of the inventory. It was the BATF's flagrant disregard for the

61

relevant statutes, regulations, policies, and procedures, essentially their abuse of the process, which caused the delay in the returning of the firearms — which was due under the law, but denied by the agency.

Mr. Bolton conflates the right of ownership with the mere act of possession and the law clearly distinguishes between the two.The point where the injury to the Plaintiff's right of "ownership"(vs. that of possession) of the firearms occurred when the firearms were destroyed by the agency, without notice to the Plaintiff that such an act was being considered. If the agency had sent her "notice" of the pending destruction, she would have had the opportunity to seek an injunction to prevent such injury. As it was, where the negotiations through counsel for the inventory's full return had failed, the plaintiff was seeking information through FOIA as to the current legal status of the firearms not only their location, but whether of not the agency had taken any legal steps she was unaware of to transfer title and to whom.

When the Plaintiff finally did receive notice on in May of 2003 (through FOIA) of the destruction which had occurred *seven years earlier* in May of 2016, she took immediate steps to file her administrative FTCA, and then the instant complaint.

(c) "Finally, even if you could overcome the bars to recovery listed above, your claim is also barred by the FTCA's detention of goods exception found at 28 U.S.C. § 2680(c)."

— The instant claim is not barred, however, because there is an

"exception" to the detention of goods exception upon which Ms. Bolton

relies, that is:

"28 U.S.C. § 2680(c). Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, *except that the provisions of this chapter []* ***apply*** *to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if—*

(1) *the property was seized for the purpose of forfeiture* under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;

(2) *the interest of the claimant was not forfeited*;

(3) *the interest of the claimant was not remitted or mitigated* (if the property was subject to forfeiture); and

(4) *the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.*

(italics, underline, and bold emphasis added)

In the instant case, all of the conditions for the exception to the exception

are met where:

1. Although the only "Notice of Forfeiture proceeding" was sent to Dr.

   Chumak, and not the owner of the firearms (See **Exhibit [C]**) the

   Notice clearly states that  "On July 21, 2008 at 1175 Westgate I Rd,

   Eddy, TX, the property described above was seized for forfeiture by

   the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)."

   (Emphasis added);

2.  There was no administrative, civil, or judicial proceeding by which the Plaintiff's ownership interests in the 62 NFA firearms were determined to have been forfeited; the condition of forfeiture had been excluded by an agreement between the US Attorney and counsel for the Plaintiff on July 18,2008, *before* the taking of the firearms by SA Rivera; SA Rivera only indicated — on the day he took the firearms — that the basis for the transfer of property was "receiv[ing] possession" and nothing more; the Plaintiffs ownership rights were tacitly admitted by the BATF when they attempted an imperfect return of the property to her;

3.  The interest of the Plaintiff in the 62 NFA firearms were never mitigated or remitted as the BATF, after attempting only a "partial return" of the property,, the BATF then destroyed the property while additional avenues were being pursued for its full return;

4.  The petitioner was never charged with a crime, and criminal proceedings against the Plaintiff were declined in advance by the US Attorney due to a lack of any evidence supporting any charge of criminal activity.

62.  The Plaintiff incorporates herein all factual averments and  legal argument presented by Attorney William W. Johnson in the petitions included herein.

# V.    Claims for Relief

## (1) Violation of the Fourth Amendment

The first Clause of the **Fourth Amendment** provides that the"right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

Where the agents of the BATF seized the Plaintiff's entire 62 NFA firearms, without establishing probable cause for the commission of any crime involving those firearms;  without obtaining a warrant; without obtaining any form of judicial review either for the initial taking of the firearms, or for their continued detention; without notifying the Plaintiff of any forfeiture proceeding  affecting her right of ownership; holding on to the firearms for 8 years in the face of  multiple requests for the return of those firearms; and, after admitting that there was no grounds for the continued detention of the firearms offered to return them to the plaintiff but only a partial return where the BATF could keep the more expensive firearms for themselves — and when the Plaintiff refused to accept such an unjustifiable partial return of her property, destroyed the entire inventory, but for three of the most expensive and rare firearms which the agency continues to keep for themselves; is, in sum, the very definition of an unreasonable seizure of the Plaintiff's effects.

## (2) Violation of the Fifth Amendment - Due Process Clause

"The seizure of [] property implicates two "`explicit textual source[s] of constitutional protection,'" the Fourth Amendment and the Fifth. *Soldal* v. *Cook County,*506 U. S. 56, 70. While the Fourth Amendment places limits on the Government's power to seize property for purposes of forfeiture, it does not provide the sole measure of constitutional protection that must be afforded property owners in forfeiture proceedings. *Gerstein* v. *Pugh,* 420 U. S. 103; *Graham* v. *Connor,* 490 U. S. 386, distinguished. Where the Government seizes property not to preserve evidence of criminal wrongdoing but to assert ownership and control over the property, its action must also comply with the Due Process Clause. See, *e. g., Calero-Toledo* v. *Pearson Yacht Leasing Co.,* 416 U. S. 663; *Fuentes* v. *Shevin,* 407 U. S. 67. Pp. 48-52."

Where the BATF conducted a warrantlesss seizure of the Plaintiff's lawfully registered

62 NFA firearms during the course of a scheduled compliance inspection and made such

seizure for the purposes of forfeiture, yet followed none of the forfeiture procedures;  failed to

provide timely  notice to the Plaintiff that her property interest were at stake, within the statutory

deadlines set out by  the relevant forfeiture statutes;  failed to initiate any civil or criminal

forfeiture against the property so as to allow the Plaintiff a forum in which she could defend her

property interests and seek the property's return; failing to adhere to the forfeiture laws that

mandate the return of property to the owner if the government fails to provide timely notice of

forfeiture the owner. All in violation of the Fifth Amendment.

## (3) Violation of the Sixth Amendment

*"In all criminal prosecutions, the accused shall enjoy the right [] to be informed of the nature and cause of the accusation;" The Sixth Amendment right to be "informed of the nature and cause of the accusation" guarantees criminal defendants "adequate notice of the charges against [them]."*

Where the BATF claimed that the law had been violated  by mere familial

association between the Plaintiff, a fully licenced FFL and SOT firearms dealer, and her

Husband, a felon proscribed from any "actual" or "constructive" possession of a firearm,

and seized the Plaintiff's entire NFA firearm inventory base upon their accusation of

66

criminal activity, yet failed to inform the Plaintiff, or counsel,  of the nature and cause of

the criminal accusations against them, and where there was no evidence that the

Plaintiff's husband had ever had any actual or constructive posession of any of the 62

NFA firearms that were seized, violates the Sixth Amendment where the plaintiff's

husband had a lawfulright to exercise his "non-possessory" ownership interests to

facilitate the sale of the firearm inventory by helping the Plaintiff designate  independent

third party buyers of their firearms.

> See *Henderson v. United States,* ___ U.S. ___, 135 S. Ct. 1780 (2015) (a
> convicted felon may transfer a firearm to whomever he chooses, as long
> as the court is satisfied that the recipient will not allow the felon to exercise
> constructive possession by having access to the firearm or directing its
> use); *United States v. Carn,* 2017 WL 8288088 (D. Nev. Dec. 11, 2017)
> (agreeing that non-contraband firearms cannot be returned to defendant
> once he is a convicted felon or to his family members, as that would give
> defendant constructive control, but ordering that firearms be transferred to
> independent gun dealer to sell on the open market); *Cooper v. City of
> Greenwood,* 904 F.2d 302, 306 (5th Cir. 1990) (defendant has
> constitutionally protected property interest that can only be extinguished
> through formal forfeiture proceedings); *United States v. Posey,* 217 F.3d
> 282, 283-84 (5th Cir. 2000) (following *Cooper*; because the Government
> did not institute forfeiture proceedings against the property in question or
> include criminal forfeiture counts in the indictment, there was no basis to
> grant the Government's post-conviction motion for an order authorizing
> disposal of the firearms used in the drug trafficking offense for which the
> defendant was convicted); *United States v. Rodriguez,* 2011 WL 5854369,
> *11 (W.D. Tex. Feb. 18, 2011) (ordering destruction of firearms under the
> All Writs Act is not a solution if the owner, though now a convicted felon, is
> asserting his property interest in the firearms; property interests may only
> be extinguished through forfeiture proceedings); *See also United States v.
> Brown,* 754 F. Supp. 2d 311, 316-17 (D.N.H. 2010) (person who is
> convicted of a felony is not immediately divested of ownership
> of his firearm collection, but may transfer title to any person of his
> choosing);

## VI.   Conclusion/Prayer for Relief

For the reasons cited herein, where there is no evidence that there was any "abandonment" or "waiver" of the Plaintiff's ownership rights to the 62 NFA firearms that were taken from her on July 21, 2008, and she was never provided notice of forfeiture proceedings against her ownership interest, or a forum in which to be heard, before the government destroyed her property, the Plaintiff prays that this Honorable Court will:

1. GRANT the Plaintiff an award of $551,500.00 for the firearms that were destroyed by the BATF;
2. ORDER that the THREE surviving firearms (SN: C138997; SN: 7085; and SN: 2178A) that are being held in the BATF's Austin Field Office in the "Prop Gun" Inventory, and are lawfully registered and titled to the Plaintiff, be returned to her;
3. ORDER any other equitable relief the court deems fit and allowable under law.

Respectfully submitted, this ___21___ day of April, 2025

I, Dawn C. Chumak, do swear under the penalty of perjury, that the foregoing, and all factual averments herein are, to the best of my knowledge and belief, correct.

Dawn C. Chumak

Dawn C. Chumak, Plaintiff, Pro Se

Address:
809 Telluride Drive
Waco, TX 76712

ATTACHMENTS:
EXHIBITS [A] through [CC]