IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DAWN C. CHUMAK, § § Plaintiff, § § v. § § UNITED STATES OF AMERICA/BATF; § RAY RIVERA, SPECIAL AGENT OF THE § BUREAU OF ALCOHOL, TOBACCO, § FIREARMS AND EXPLOSIVES AND § INDIVIDUAL CAPACITY; CHRISTOPHER § SHAEFER, ASSISTANT DIRECTOR § PUBLIC AND GOVERNMENT AFFAIRS § AND IN INDIVIDUAL CAPACITY; THREE § REGISTERED CLASS III NFA FIREARMS; § JOHN DOES 1-6, § § Defendants. § | Case No. 6:25-cv-00155-LS |

## **DEFENDANTS' MOTION TO DISMISS**

Defendants United States of America, Ray Rivera, and Christopher Shaefer (collectively, "Defendants") file this motion to dismiss Plaintiff Dawn Chumak's claims pursuant to Rules 12(b)(1) and 12(b)(6).

### **Introduction**

In 2008, Plaintiff Dawn C. Chumak voluntarily surrendered 62 firearms to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Eight years later, in 2016, the firearms were destroyed. Plaintiff complains that the firearms were improperly seized and destroyed. These claims, however, are not cognizable under the Federal Tort Claims Act ("FTCA"). They are also time-barred and even further barred by the detention-of-goods exception to the FTCA.

Plaintiff's claims against the named individual defendants are not authorized under *Bivens* and are time-barred as well. Additionally, there is no indication that either named individual defendant has been properly served. The Court, therefore, should dismiss Plaintiff's claims.

## **Factual Background**

Plaintiff's husband, Bogdan Chumak, became a federal firearms license ("FFL") dealer in 1983. ECF No. 1 ¶ 8. Ten years later, Bogdan Chumak was convicted of a felony and thus became unable to possess firearms. *Id.* ¶ 17. Between Bogdan Chumak's indictment and conviction, Plaintiff applied for and was granted an FFL license and a Class 3 Special Occupational Taxpayer ("SOT") license. *Id.* ¶ 16. Bogdan Chumak then allegedly received approval from the sentencing court and ATF to transfer ownership and possession of his entire firearms inventory to Plaintiff. *Id.* ¶ 17. Plaintiff conducted various firearms transactions over the years up until 2008, with Bogdan Chumak assisting and advising her. *Id.* ¶¶ 18-24.

ATF began investigating Plaintiff and Bogdan Chumak in May 2008 in response to an anonymous tip. *Id.* ¶ 26. According to Plaintiff, the anonymous tipster suggested that she and Bo Chumak were involved in firearms transactions that led to those firearms being released into Mexico. *Id.* Plaintiff claims she was threatened with criminal prosecution as a straw purchaser and improperly obtaining an FFL unless she surrendered her inventory of NFA firearms. *Id.* ¶ 34. Plaintiff retained counsel to assist in her interactions with ATF. *Id.* ¶ 36. She claims that the parties, including the U.S. Attorney's Office for the Western District of Texas, came to an agreement by which she would surrender her firearms inventory while they attempted to reach a resolution through the administrative process. *Id.* On July 21, 2008, ATF personnel met with Plaintiff to inspect and take possession of her firearms inventory. *Id.* ¶ 37. The basis for the transfer of firearms

from Plaintiff to ATF, as noted in the Receipt for Property and Other Items, was "[a]bandonment." ECF No. 1-6. Plaintiff signed the receipt. *Id.*

ATF subsequently initiated forfeiture proceedings on the firearms and sent notice to Bogdan Chumak on December 12, 2008. ECF No. 1-4. The letter explained how to contest the forfeiture or petition for remission or mitigation of forfeiture. *Id.* Bogdan Chumak petitioned for remission or mitigation of forfeiture through counsel. ECF No. 1-7. ATF denied his petition and request for reconsideration. ECF Nos. 1-8, 1-10, 1-11. In their letter denying Bogdan Chumak's request for reconsideration, ATF explained that they would consider the merits of Plaintiff's own petition for remission or mitigation if it was received within fourteen days of the letter. ECF No. 1-11. Plaintiff then submitted her own petition for remission or mitigation within the time prescribed, on December 7, 2010. ECF No. 1-12.

Plaintiff alleges that between 2012 and 2013, ATF made multiple offers to settle the matter by returning certain firearms. ECF No. 1 ¶ 53. ATF was willing to return 51 of the 62 firearms that Plaintiff had surrendered. *Id.* Plaintiff did not agree to this arrangement because she claims ATF wanted to retain possession of the most valuable firearms. *Id.* Instead, she enlisted the assistance of Congressman William Flores, who sent a congressional inquiry to ATF on Plaintiff's behalf. *Id.* On May 28, 2015, ATF responded to the congressional inquiry and provided the following background information:

> By way of background, in April 2008, ATF's Phoenix Field Office received information about potential violations of the Gun Control Act (GCA) and the National Firearms Act (NFA) being committed by Federal firearms licensee (FFL) Dawn Chumak. On May 18, 2009, ATF interviewed Mrs. Chumak, and during this interview she admitted, in sum and substance, that she had improperly obtained her FFL at her husband's, Dr. Bogdan Chumak's direction and request. She explained that she obtained her FFL so Dr. Chumak could continue to operate a firearms business under her name after he lost his firearms license due to a felony conviction. On July 21, 2008, Mrs. Chumak voluntarily abandoned 62 firearms to ATF in the presence of her attorney, Mr. Thomas West.

ECF No. 1-20. ATF further explained that it considered the matter closed since ATF owned the firearms and Plaintiff did not respond to ATF's efforts to resolve the matter. *Id.*

Plaintiff sent multiple letters to ATF in 2021 and 2022 to determine the status of the firearms. ECF No. 1 ¶¶ 56-57. On May 26, 2023, ATF returned one of the letters with an annotation indicating the weapons had been destroyed in 2016. *Id.* ¶ 58; ECF No. 1-26. Plaintiff later submitted her administrative tort claim on June 25, 2024. ECF No. 1-28. ATF denied Plaintiff's administrative claim on October 21, 2024. ECF No. 1-30.

## **Legal Standard**

Federal courts are courts of limited jurisdiction and lack the power to adjudicate claims absent jurisdiction conferred by the Constitution or a statute. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). "[T]here is a presumption against subject matter jurisdiction." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). The plaintiff bears the burden of demonstrating jurisdiction in Federal court. *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 534, 537 (5th Cir. 2017). Parties cannot waive jurisdiction. *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995); Fed. R. Civ. P. 12(h)(3). "Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

A motion to dismiss under Rule 12(b)(6) seeks dismissal when the plaintiff fails to plead facts that support its claim for relief. "To survive a Rule 12(b)(6) motion, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (quoting *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565

F.3d 200, 206 (5th Cir. 2009)). The alleged facts must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Argument & Authority

Plaintiff's claims must be dismissed. The Court lacks jurisdiction over Plaintiff's claims against the United States because Plaintiff relies solely on the United States Constitution for claims brought under the FTCA. But the Constitution cannot serve as a predicate for an FTCA claim. The United States is therefore immune from suit. Even if Plaintiff's claims were not barred by sovereign immunity, they are time-barred. Plaintiff's arguments all hinge on the alleged impropriety of the transfer of firearms from her possession to ATF's possession. That happened in 2008. Plaintiff submitted her administrative claim in 2024—well after the two-year statute of limitations for claims brought under the FTCA. Even assuming Plaintiff's claims were timely and not jurisdictionally barred, they would still be barred by the FTCA's detention-of-goods exception.

As for the individual defendants, notwithstanding jurisdictional and limitations issues, Plaintiff's allegations implicate a new context to which *Bivens* does not extend. And in any event, Plaintiff has yet to properly serve the individual defendants. This provides another basis for dismissal. The Court should grant Defendants' motion and dismiss this case.

**I.     Plaintiff's FTCA claims must be dismissed.**

    **A.     Constitutional torts do not provide a basis for an FTCA claim.**

Plaintiff brings her claims against the United States under the FTCA. ECF No. 1 ¶ 1. The FTCA is the exclusive remedy for suits against the United States sounding in tort. 28 U.S.C. § 2679(a). The FTCA grants a limited waiver of sovereign immunity and allows tort claims against

the United States "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Liability under the FTCA is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). "Law of the place" means "the law of the state" in which the alleged tort occurred. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). Constitutional torts, however, do not provide a proper predicate for an FTCA claim. *See Meyer*, 510 U.S. at 478 (holding that a plaintiff's FTCA claim must be based on a state-law tort claim and cannot be based on a federal constitutional or statutory claim against the Government); *see also Spotts v. United States*, 613 F.3d 559, 576 n.3 (5th Cir. 2010).

Here, all of Plaintiff's claims against the United States are predicated on alleged constitutional violations. She claims her rights under the Fourth, Fifth, and Sixth Amendments to the United States Constitution were violated. ECF No. 1 at 65-67. Plaintiff does not, however, allege *any* violation of state law. Since Texas state law governs liability and Plaintiff makes no claim under Texas state law, the Court lacks subject matter jurisdiction over Plaintiff's claims against the United States. *See Meyer*, 510 U.S. at 478; *Saulters v. United States*, No. W-16-CA-25-RP-JCM, 2016 WL 11586950, at *3 (July 15, 2016) (dismissing an FTCA claim predicated on an alleged Fourth Amendment violation for lack of jurisdiction). The Court should therefore dismiss Plaintiff's claims against the United States pursuant to Rule 12(b)(1).

### B. Plaintiff's FTCA claims are time-barred.

Even if Plaintiff's claims against the United States were not jurisdictionally barred, they were brought well past the applicable two-year statute of limitations. Accordingly, they are time-barred and subject to dismissal on that basis as well.

The statute of limitations in § 2401 states that a tort claim against the United States is forever barred if not presented to the appropriate agency within two years of accrual of the claim.

28 U.S.C. § 2401(b). The FTCA's statute of limitations is an affirmative defense to be considered under Rule 12(b)(6), for which the United States has the burden of proof. *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 486 (5th Cir. 2016). "A cause of action under federal law accrues within the meaning of § 2410(b) 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001) (quoting *Brown v. NationsBank Corp.*, 188 F.3d 579, 589–90 (5th Cir. 1999)). Where a plaintiff claims she was not aware of the injury or could not have determined facts critical to ascertaining the injury's cause, the discovery rule governs accrual of a claim. Under the discovery rule, an FTCA accrues when a plaintiff knows of both the injury and its cause. *Trinity Marine Prods.*, 812 F.3d at 487. A plaintiff's knowledge depends upon two elements: the existence of the injury and the connection between the injury and the defendant's actions. *Brown*, 188 F.3d at 589–90.

Here, Plaintiff complains that her 62 firearms were unlawfully seized by ATF. ECF No. 1 65-66. Plaintiff's claims accrued in 2008 when the alleged seizure occurred. Plaintiff became aware of her injury (being dispossessed of the firearms) and the connection between the injury and the defendant's actions on the date ATF took possession of the firearms: July 21, 2008. *Brown*, 188 F.3d at 589–90; ECF No. 1 ¶ 37. Plaintiff did not file her administrative claim in this case until 2024—16 years after the firearms transaction and 14 years beyond FTCA's two-year statute of limitations.

Plaintiff attempts to side-step her limitations issue by framing her claim as one for negligent destruction of property rather than unlawful seizure of property. She argues that her injury occurred in 2016 when the firearms were destroyed but that she did not discover the injury until 2023 when she received a response to her FOIA request. ECF No. 1 ¶ 61. This argument,

however, depends on Plaintiff being the lawful owner of the firearms. Plaintiff cannot challenge the destruction of the firearms without also challenging ATF's ownership of the firearms. Otherwise, she would have no standing to challenge the destruction of property that is not hers. Plaintiff became aware that ATF intended to forfeit the firearms in December 2008, when ATF sent its notice of forfeiture proceedings to Bogdan Chumak. ECF No. 1-4. At this point it became clear that ATF was not merely safekeeping the firearms with an intent to ultimately return them to Plaintiff. This is the latest arguable point at which Plaintiff could have known or had reason to know of the injury that forms the basis of her claims. *See Ramming*, 281 F.3d at 162. Since Plaintiff's cause of action accrued in 2008 and she did not file her administrative claim until approximately 16 years later, Plaintiff's claims are time-barred.

      **C.**      **Plaintiff's claims are barred by the detention-of-goods exception.**

Even if Plaintiff's claims were timely and not jurisdictionally barred, they would still be barred by the detention of goods exception to the FTCA. The detention-of-goods exception preserves sovereign immunity against "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer . . . ." 28 U.S.C. § 2680(c). The Supreme Court has held that any claim "arising in respect of" means any claim "arising out of" the detention of goods. *Kosak v. United States*, 465 U.S. 848, 854 (1984).

Through the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Congress added paragraphs (1)-(4) to 28 U.S.C. § 2680(c). Those new paragraphs provide that the waiver of sovereign immunity in 28 U.S.C. § 1346(b) applies to damage to property while in the possession of certain government employees, including law enforcement officers, if:

> (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
>
> (2) the interest of the claimant was not forfeited;
> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680(c). CAFRA therefore restored the waiver of sovereign immunity with respect to certain forfeiture-related seizures—those where all four paragraphs of § 2680(c) are met. *Foster v. United States*, 522 F.3d 1071, 1075 (9th Cir. 2008).

Here, Plaintiff relies on CAFRA to get around the detention-of-goods exception. ECF No. 1 ¶ 61. But CAFRA does not apply in this case because this case concerns NFA firearms. Although CAFRA's language indicates that it applies to any civil forfeiture action brought under any "civil forfeiture statute," it specifically exempts "the Internal Revenue Code of 1986" from its definition of a "civil forfeiture statute." *See* 18 U.S.C. §§ 983(c)(1), (i)(2)(B). Since the NFA is part of Title 26 (the Internal Revenue Code), § 983(i)(2)(B) prevents CAFRA from applying to this case that concerns NFA firearms. *See United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 441 F.3d 416, 425 n.1 (6th Cir. 2006) (Griffin, J., dissenting).

Even assuming CAFRA applied to this case, it would not save Plaintiff's claims from the detention-of-goods exception. That is because the "re-waiver" of sovereign immunity outlined in § 2680(c)(1)-(4) applies only to property seized *solely* for the purposes of forfeiture. *See Foster*, 522 F.3d at 1075; *see also Ramirez v. Pompa Garcia*, No. 2:18-CV-446, 2019 WL 5595367, at *4 n.2 (S.D. Tex. Oct. 30, 2019) (agreeing with the Ninth Circuit's interpretation of § 2680(c)(1)-(4) in *Foster* and noting that the Fifth Circuit has cited *Foster* with approval in multiple decisions). Even if Plaintiff were able to demonstrate her firearms were seized as opposed to being abandoned,

9

the firearms did not come into ATF's possession *solely* for the purposes of forfeiture. Plaintiff and her husband were being investigated for a potential violation of the Gun Control Act in 2008 at the time of the firearms transfer. ECF No. 1-20. Although ATF later gave notice that the firearms would be forfeited, the firearms came into ATF's possession as a result of a criminal investigation.

Seizures pursuant to a criminal investigation do not waive sovereign immunity under § 2680(c). *Ramirez*, 2019 WL 5595367, at *4. As explained in *Foster*, "the fact that the government may have had the possibility of a forfeiture in mind when it seized Plaintiff's property does not detract from the application of the detention of goods exception when criminal investigation was a legitimate purpose of the initial seizure." 522 F.3d at 1075. Accordingly, even if Plaintiff were able to demonstrate that her firearms were seized, they would have been seized pursuant to a criminal investigation and not solely for the purposes of forfeiture. The "re-waiver" of sovereign immunity in § 2680(c)(1)-(4), therefore, does not save Plaintiff's claims from the detention-of-goods exception.

**II.     Plaintiff's individual-capacity claims must be dismissed.**

In addition to her FTCA claims against the United States, Plaintiff also brings *Bivens* claims against Rivera and Schaefer. ECF No. 1 ¶¶ 1, 3-4. She appears to claim that Rivera unlawfully seized her firearms, and that Schaefer made false statements in response to the congressional inquiry made on her behalf. *Id.* ¶¶ 3-4. These claims, however, fall well outside the narrow category of claims authorized under *Bivens*. And as with Plaintiff's claims against the United States, her individual-capacity claims are also time-barred. Moreover, neither Rivera nor Schaefer have been served.

The Supreme Court, in 1971, recognized an implied right of action "to sue federal officers for violating an arrestee's 'rights of privacy' by 'manacl[ing] petitioner in front of his wife and

10

children,' 'threaten[ing] to arrest the entire family,' and strip searching him." *Cantu v. Moody*, 933 F.3d 414, 421 (5th Cir. 2019) (quoting *Bivens v. Six Unknown Named Agency of Fed. Bureau of Narcotics*, 403 U.S. 388, 389–90 (1971)), *cert. denied*, 141 S. Ct. 112 (2020). During the following nine years, the Supreme Court acknowledged two additional implied causes of action under *Bivens*: A Fifth Amendment equal protection claim by a former staff member against a congressman for discrimination on the basis of sex, *see Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment claim by an asthmatic prisoner against federal jailers for inadequate medical care while in custody, *see Carlson v. Green*, 446 U.S. 14 (1980).

Since *Carlson*, however, the Supreme Court has consistently rejected "every *Bivens* claim presented to it." *Cantu*, 933 F.3d at 421; *Ziglar v. Abbasi*, 582 U.S. 120, 131–33 (2017) (collecting cases). In fact, the nine years during which the Supreme Court decided *Bivens*, *Davis*, and *Carlson*, "represent[s] the entire lifespan of *Bivens*." *Byrd v. Lamb*, 990 F.3d 879, 883 (5th Cir. 2021) (Willett, J., concurring), *cert. denied*, 142 S. Ct. 2850 (2022). And while the Supreme Court has "emphasized that *Bivens*, *Davis*, and *Carlson* remain good law," it has stated that the *Bivens* trilogy is "the byproduct of an 'ancien regime,'" *Cantu*, 933 F.3d at 421 (quoting *Abbasi*, 582 U.S. at 131), "that freely implied rights of action." *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2669 (2021). Indeed, the Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is a 'disfavored judicial activity.'" *Egbert v. Boule*, 596 U.S. 482, 491 (2022) (quoting *Abbasi*, 582 U.S. at 135).

Thus, the Supreme Court has developed a two-part test to determine whether a *Bivens* claim may proceed. *Egbert*, 596 U.S. at 493. First, a court must ask whether the plaintiff's claim "presents 'a new *Bivens* context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* Second, if it is, the court asks whether there

11

are "special factors counselling hesitation" in extending the *Bivens* remedy. *Abbasi*, 582 U.S. at 136. These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (citations omitted).

      A.      **Plaintiff's claims present a new *Bivens* context.**

Plaintiff's claims do not fall within or even remotely approach the three specific factual scenarios to which a *Bivens* remedy may extend. Aside from the specific scenarios in *Bivens*, *Davis*, and *Carlson*, "[v]irtually everything else is a 'new context.'" *Oliva*, 973 F.3d at 442 (citations omitted). That is because even a modest extension of the *Bivens* trilogy "'is still an extension.'" *Id.*

Meaningful differences that can signal a new context include: (1) the rank of the officers involved; (2) the constitutional right at issue; (3) the generality or specificity of the official action; (4) the extent of judicial guidance as to how an officer should respond; (5) the statutory or other legal mandate under which the officer was operating; (6) the risk of disruptive intrusion by the judiciary into the functioning of other branches; or (7) the presence of special factors that previous *Bivens* cases did not consider. *Cantu*, 933 F.3d at 423. Furthermore, a *Bivens* claim may meaningfully differ from the *Bivens* trilogy even if the plaintiff asserts "a claim under the . . . same clause of the same amendment in the same way" and even if the "'mechanism of injury was the same mechanism of injury in a previous *Bivens* case.'" *Id.* at 422 (quoting *Abbasi*, 582 U.S. at 139).

Here, Plaintiff's claims bear no resemblance to the facts in any of the cases encompassing the *Bivens* trilogy. Her claims against Rivera are like those in *Bivens* only insofar as they reference

the Fourth Amendment. But "[c]ourts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" *Cantu*, 933 F.3d at 422. This is not a case in which an individual claims that officers entered her home without a warrant, manacled her in front of her family, and conducted a strip search without justification. *See Oliva*, 973 F.3d at 443. Instead, this case concerns what appears to have been an amicable transfer of firearms from Plaintiff to ATF vis-à-vis Agent Rivera. The firearms were documented as "abandoned" and were transferred to ATF through a negotiation between the parties. Although Plaintiff now claims that the firearms were seized and not voluntarily abandoned, she does not allege a warrantless entry into her home or any privacy violation.

The allegations against Schaefer are even a bigger stretch. Plaintiff appears to claim that Schaefer made false statements in his response to Plaintiff's congressional inquiry. ECF No. 1 ¶ 4. Specifically, Plaintiff claims Schaefer falsely stated that Plaintiff had abandoned her firearms and therefore ATF had vested title to the firearms. *Id.* ¶ 54. It is unclear, however, what legal claims Plaintiff brings against Schaefer. Whatever they may be, they clearly fall outside the *Bivens* context. The Fifth Circuit has rejected the proposition that Bivens authorizes *carte blanche* Fourth Amendment claims for "seizures without legal process [or] . . . with wrongful legal process." *Cantu*, 933 F.3d at 423. That is precisely what Plaintiff's claims ultimately amount to.[1]

With respect to Plaintiff's Fifth Amendment Due Process claim, the Supreme Court has only extended *Bivens* to the Due Process Clause in the context of equal protection. *Compare Davis*, 442 U.S. at 228, 248–49 (extending *Bivens* to an equal protection claim brought by an employee against a Congressman for gender discrimination) *with Schweiker v. Chilicky*, 487 U.S. 412, 414

---

[1] For this reason, Plaintiff's claims against Does 1-6 are not authorized under *Bivens* and should also be dismissed. *See* ECF No. 1 ¶ 5.

13

(1988) (declining to extent *Bivens* against Social Security officials for the deprivation of allegedly entitled benefits under the statute). Because Plaintiff's Fifth Amendment claim is not predicated on an equal protection violation, it presents a new context under *Bivens*. Plaintiff's Sixth Amendment claim "definitively involves a new context" as it "arises out of an entirely different constitutional amendment" than those recognized in the Bivens trilogy. *See Moore v. City of Dallas*, No. 3:22-CV-0714-M-BT, 2023 WL 2589394, at *10 (N.D. Tex. Mar. 17, 2023); *Johnson v. Dettmering*, No. CV 19-00744-BAJ-SDJ, 2021 WL 3234623, at *6 (M.D. La. July 29, 2021) (noting that the Supreme Court has never recognized a *Bivens* claim predicated on a violation of the Sixth Amendment).

    **B.    Special factors counsel against extending Bivens to this new context.**

When a purported *Bivens* claim is asserted in a new context, *Abbasi* requires consideration of whether "special factors" counsel against inferring such a cause of action in the absence of "affirmative action by Congress." *Abbasi*, 582 U.S. at 121. The "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 137. Relatedly, "if there is an alternative remedial structure present in a certain case," the existence of that process "alone may limit the power of the Judiciary to infer a new Bivens cause of action." *Id.*

This case involves forfeiture proceedings, and Congress has outlined a comprehensive scheme whereby claimants may challenge the forfeiture of property or submit a petition for remission or mitigation of forfeiture through the administrative process. *See* 19 U.S.C. §§ 1602–

1618; 28 C.F.R. Part 9. "The purpose of the remission statutes is to grant the executive the power to ameliorate the potential harshness of forfeiture." *In re Sixty Seven Thousand Four Hundred Seventy Dollars*, 901 F.2d 1540, 1543 (11th Cir. 1990). This is an alternative remedial structure that Plaintiff availed herself of, albeit unsuccessfully. The FTCA also provides a method by which Plaintiff may seek recourse for any negligent or wrongful acts committed by federal employees acting within the scope of their employment. *See Cantu*, 933 F.3d at 423–24. Indeed, Plaintiff brings claims under the FTCA in this case. That Plaintiff's FTCA claims are untimely and jurisdictionally barred does not mean an alternate remedy is not available to her. *See Oliva*, 973 F.3d at 444. Each of these factors militate against extending the *Bivens* remedy to Plaintiff's claims. The Court, therefore, should decline to extend a *Bivens* remedy to Plaintiff's claims and dismiss her claims against Rivera and Schaefer on that basis.

    **C.**    **Plaintiff's *Bivens* claims are time-barred.**

Even if *Bivens* authorized a cause of action in this case, Plaintiff's claims would still be time-barred. The statute of limitations is two years for a *Bivens* claim brought in Texas. *See Spotts*, 613 F.3d at 573. Federal law governs when a Bivens claim in Texas accrues. *Id.* at 574. As explained above, Plaintiff's claims related to the transfer of her firearms accrued in 2008 when the transfer occurred. *See supra* at 6-8. Any claims related to statements made by Schaefer in his letter to Congressman Flores would have accrued in 2015, when the letter was written and sent. *See* ECF No. 1-20. Plaintiff's claims as to the individual-capacity defendants, brought in 2024, are well past the two-year statute of limitations for *Bivens* claims and would be subject to dismissal on that basis as well.

### D.     Rivera and Schaefer have not been properly served.

Even if the Court were not to dismiss Plaintiff's claims against Rivera and Schaefer on other grounds, Plaintiff's claims should be dismissed for lack of proper service. In bringing this action against Rivera and Schaefer in their individual capacities, Plaintiff is required to served them in their individual capacities. Fed. R. Civ. P. 4(i)(3). Plaintiff bears the burden of proving the validity of service. *Sys. Signs Supplies v. U.S. Dep't of Justice, Washington, D.C.*, 903 F.2d 1011, 1014 (5th Cir. 1990).

"Service upon an employee in his official capacity does not amount to service in his individual capacity." *Robinson v. Turner*, 15 F.3d 82, 85 (7th Cir. 1994); *see also Micklus v. Carlson*, 632 F.3d 227, (3d Cir. 1980) (plaintiff "nevertheless argues that once [defendant] was properly served in his official capacity, he was properly before the court in both individual and official capacities. We reject this argument.").

Federal law permits service of a complaint through four relevant mechanisms. First, a non-party can serve a complaint by delivering it to the individual personally. Fed. R. Civ. P. 4(e)(2)(A). Second, a non-party can serve a complaint by leaving a copy at a person's house with somebody of suitable age and discretion. Fed. R. Civ. P. 4(e)(2)(B). Third, a non-party can serve a complaint by delivering a copy to an agent of the individual authorized by appointment or law to receive service. Fed. R. Civ. P. 4(e)(2)(C). Fourth, a non-party can serve a complaint by following the state law process for service. Fed. R. Civ. P. 4(e)(1).

Here, there is no indication on the Court's docket that Rivera or Schaefer have been properly served. Plaintiff has conceded that she has not served Rivera or Schaefer. ECF No. 13. More than 90 days has passed since Plaintiff initiated her lawsuit. If not dismissed on other

grounds, the Court should dismiss Plaintiff's claims against Rivera and Schaefer for failure to complete service or require proper service. Fed. R. Civ. P. 4(m).

## Conclusion

Plaintiff's FTCA claims are untimely and jurisdictionally barred. Plaintiff's individual-capacity claims are not authorized under Bivens and are also untimely. Moreover, the named individual defendants have not been properly served. Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's claims with prejudice.

Dated: November 13, 2025                Respectfully submitted,

**Justin R. Simmons**
United States Attorney

By:   */s/ Landon A. Wade*
**Landon A. Wade**
Assistant United States Attorney
State Bar No. 24098560
U.S. Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, Texas 78701
(512) 370-1255 (phone)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

***Attorney for Defendants***

## CERTIFICATE OF SERVICE

I certify that the foregoing will be served on Plaintiff on November 14, 2025, at the below listed address, via first class mail.

**Dawn C. Chumak**
809 Telluride Drive
Waco, Texas 76712
Pro Se

                                             */s/ Landon A. Wade*
                                             Landon A. Wade
                                             Assistant United States Attorney